# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO
# ALBUQUERQUE DIVISION

| | |
|---|---|
| DANIA PRUESS, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>PRESBYTERIAN HEALTH PLAN, INC.<br><br>  Defendant. | No. _____ |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Dania Pruess ("Plaintiff") files this Class and Collective Action Complaint ("Complaint") against Presbyertian Health Plan, Inc. ("Defendant"), and in support states the following:

**Nature of this Lawsuit**

1.  Defendant is a state-licensed Health Maintenance Organization (HMO) in New Mexico.

2.  Defendant is a federally qualified HMO under Title XIII of the Public Health Service Act.

3.  As an HMO, Defendant's business consists of entering into health maintenance contracts with its health plan customers to provide managed care services to health plan enrollees in exchange for fixed monthly fee per health plan enrollee.[1]

---

[1] www.hsd.state.nm.us/LookingForInformation/managed-care-organizations.aspx (New Mexico Human Services Department website identifying Defendant as one of three Managed Care Organizations providing administrative services for New Mexico government sponsored health plan) (last visited July 8, 2019).

4.      As an HMO, neither Defendant nor its employees directly provide traditional nursing care or medical care to patients or other individuals with health issues.

5.      As an HMO, Defendant contracts with and pays health care providers to provide the healthcare services that provide medical care to health plan enrollees.

6.      Defendant is a managed care organization that provides care coordination and utilization review services to its health plan customers to minimize the costs of medical care.

7.      Defendant has been contractually required to provide care coordination and utilization review services to Medicaid enrollees in New Mexico's Centennial Care Program since contracting with the New Mexico Department of Human Services to provide managed care services in 2014 ("Medicaid Managed Care Contract" or "Agreement").

8.      Defendant employed Plaintiff and other individuals in non-managerial positions to perform case management and utilization review functions under various "job titles" in its "Case/Utilization Management and Care Coordination"[2] job family that include one or more of the following terms or variations of those terms: (1) "Support Broker," (2) "Case/Care Manager," (3) "Care Coordinator," and (4) "Utilization Review/Management" (collectively, "Care Coordination Employees").

---

[2] See e.g. http://bit.ly/2KWCrrW (providing that position was in Defendant's "Case/Utilization Mgmt/Care Coord" category of jobs) ("July 8, 2019).

9. The Medicaid Managed Care Contract identifies "Key Personnel" with "management responsibility or principal responsibility" that Defendant has been contractually required to employ.[3]

10. The Key Personnel identified by the Managed Care Contract include the following:

> Chief Executive Officer, Chief Medical Officer, Chief Financial Officer, a Chief Information Officer, a Contract Manager, a Compliance Officer, a Implementation Manager, a Claims Administrator, a Grievances and Appeals Manager, an Ombudsman, a senior executive dedicated to the Agreement who is a board-certified psychiatrist, a senior executive dedicated to the Agreement, a staff person dedicated to overseeing network provider issues, a staff person dedicated to overseeing of all utilization management activities, a staff person dedicated staff person for work on Native American disparity issues related to Care Coordination, and a staff person dedicated to overseeing member services including the member services call center (collectively, "Key Personnel").[4]

11. Care Coordination Employees are not identified as Key Personnel in the Agreement.

12. Care Coordination Employees are supervised by and report to Key Personnel or individuals who are supervised by or report to Key Personnel.

13. Care Coordination Employees are lower in Defendant's organizational hierarchy than Key Personnel.

14. Defendant's Key Personnel develop the policies that Care Coordination Employees must follow to carry out Defendant's contractual obligations under the Agreement.

---

[3] Section 3.3.3 of the Medicaid Managed Care Contract (http://bit.ly/NMMedicaidK) (last visited July 8, 2019).
[4] Id., §§ 3.3.1-3.3.3.17 (last visited July 8, 2019).

15. Care Coordination Employees do not develop the policies that Defendant must follow in order to carry out its contractual obligations under the Agreement.

16. Defendant paid some or all Care Coordination Employees a salary.

17. Defendant's Care Coordination Employees regularly worked over 40 hours per week.

18. Defendant classified some or all Care Coordination Employees as exempt from state and federal overtime laws and did not pay them overtime when they worked over 40 hours in individual workweeks.

19. Defendant misclassified some or all Care Coordination Employees as exempt from state and federal overtime laws.

20. The utilization review and case management duties performed by Plaintiff and other Care Coordination Employees consisted of non-exempt work, including collecting information to document enrolled individuals' medical circumstances, inputting medical information into Defendant's computer system, using established guidelines to maximize utilization of plan resources through application of predetermined criteria, coordinating care by performing ministerial tasks, including arranging appointments, referrals, and obtaining necessary authorizations from enrolled individuals, supplying insured individuals with additional information and resources to allow them to educate themselves about their health plan, and other similar work ("Managed Care Work").

21. Plaintiff brings this action on behalf of herself and other similarly situated Care Coordination Employees who, due to Defendant's misclassification scheme, were not

paid all earned overtime pay for time they worked in excess of forty (40) hours in one or more individual work weeks in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

22. Plaintiff also brings class action claims under New Mexico state law under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, *et seq*.

23. Plaintiff brings her NMMWA claims pursuant to Fed. R. Civ. P. 23(b)(3) and 23(c)(4) for Defendant's failure to pay her and other Care Coordination Employees for all earned overtime pay.

24. Because Defendant violated the NMMWA as part of a continued course of conduct, this action should encompass all violations that occurred as part of Defendant's continued course of conduct without regardless of the date on which they occurred pursuant to NMMWA § 50–4–32.

**The Parties**

25. Plaintiff worked for Defendant in this Judicial District from approximately January 2017 to June 2017.

26. Defendant is a New Mexico corporation.

27. Defendant's principal place of business is in this Judicial District.

**Jurisdiction and Venue**

28. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's FLSA claim arises under federal law. *See* to 29 U.S.C. § 216(b).

29. This Court has supplemental jurisdiction over Plaintiff's NMMWA claim under 28 U.S.C § 1367(a) because it arises out of the same facts as Plaintiff's FLSA claim.

30. Venue is proper in this District under 28 U.S.C. § 1391 because the events forming the basis of the suit occurred in this District.

**Factual Allegations**

31. Defendant holds an accreditation as a Health Maintenance Organization from the National Committee on Quality Assurance.[5]

32. Defendant is required to provide managed care services to Medicaid and Medicare enrollees pursuant to contracts entered with the state of New Mexico.

33. Plaintiff worked as a Care Coordination Employee for Defendant under one or more job titles, including "Utilization Review Nurse."

34. During her employment with Defendant, Plaintiff primarily performed Managed Care Work.

35. During her employment with Defendant, Plaintiff's job duties were routine and rote and did not include the exercise of discretion and independent judgment with respect to matters of significance.

36. During her employment, Plaintiff's job duties did not include engaging in bedside nursing or providing medical advice to patients or other individuals with health issues.

37. During her employment, Plaintiff's job duties did not involve providing traditional nursing care to patients or other individuals in a clinical setting or providing direct medical care to patients or other individuals with health issues.

---

[5] https://reportcards.ncqa.org/#/health-plans/list?q=presbyterian (last visited July 8, 2019).

38. During their employment, Plaintiff's job duties did not involve making medical decisions in order to select the appropriate medical care for patients or other individuals to treat their medical issues or ailments.

39. During her employment, Plaintiff's job duties did not include administering patients' medicine or treatments, operating or monitoring medical equipment, helping perform diagnostic tests or analyzing the results from diagnostic tests, diagnosing human responses to actual or potential health problems, monitoring and reporting whether patients were receiving medical services, interviewing patients to consider or advise them regarding alternative treatments, providing medical opinions on treatment and medication, assessing whether requested treatments were related to the original compensable injury, or determining whether an issue should be referred for an independent medical evaluation.

40. Defendant required Plaintiff to work over 40 hours in one or more individual workweeks.

41. During her employment with Defendant, Plaintiff worked over 40 hours in one or more individual workweeks.

42. Defendant classified Plaintiff as exempt from the overtime provisions of the FLSA and NMMWA.

43. Defendant paid Plaintiff a salary.

44. When Plaintiff worked over 40 hours in individual workweeks, Defendant did not pay Plaintiff overtime at one-and-one-half times her regular rate of pay.

45. Defendant is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

46. Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

47. Defendant has had more than $500,000 in sales made or business done in each of the last three calendar years.

48. During her employment, Plaintiff was an "employee" of Defendant as defined by the FLSA in 29 U.S.C. § 203(e).

49. During her employment, Plaintiff was an "employee" of Defendant as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(c).

50. During her employment, Defendant was Plaintiff's "employer" as defined by the FLSA in 29 U.S.C. § 203(d).

51. During her employment, Defendant was Plaintiff's "employer" as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(b).

**Collective Action Allegations**

52. Plaintiff brings her FLSA claim as a collective action.

53. Plaintiff's consent form to participate in the collective action is attached to this Complaint as Exhibit A.

54. The collective action is defined as follows:

All individuals employed by Defendant as Care Coordination Employees in the last three years who were paid on a salary-without-overtime basis ("Collective Action Members").

55. Plaintiff is similarly situated to potential Collective Action Members because they were paid the same way and performed the same primary job duties.

56. In the last three years, Defendant employed individuals who performed the same primary job duties as Plaintiff.

57. Of Defendant's employees who performed the same primary job duties as Plaintiff in the last three years, Defendant classified some or all as exempt from the overtime provisions of the FLSA and paid them a salary.

58. Of employees Defendant classified as exempt and who performed the same primary job duties as Plaintiff in the last three years, some or all worked over 40 hours in individual workweeks.

59. Defendant maintained one or more common job descriptions for Care Coordination Employees.

60. Defendant has names and addresses for potential Collective Action Members in its payroll or personnel records.

61. Defendant has email addresses for potential Collective Action Members in its payroll or personnel records.

62. Defendant has phone numbers for potential Collective Action Members in its payroll or personnel records.

63. Defendant is aware or should have been aware that the FLSA required it to pay potential Collective Action Members overtime because they primarily performed non-exempt work.

**Class Action Allegations**

64. Plaintiff brings her NMMWA claim as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

65. The class is defined as follows:

All individuals employed by Defendant as Care Coordination Employees in New Mexico who received pay on a salary-without-overtime basis since Defendant began paying Care Coordination Employees on that basis ("the Class").

66. The Class has more than 40 members.

67. As a result, the Class is so numerous that joinder of all members is not practical.

68. There are questions of law or fact common to the Class, including: (1) whether members of the Class primarily performed non-exempt work; (2) whether Defendant violated the NMMWA by refusing to pay members of the Class overtime pay; and (3) the proper measure of damages if Defendant misclassified members of the Class as exempt from the overtime provisions of the NMMWA.

69. Plaintiff's overtime claims are typical of those of the Class because they arise out of Defendant's uniform compensation practices.

70. Defendant's defenses to Plaintiff's claims are typical of its defenses to those of the Class because they are grounded in the same compensation practices.

71. Plaintiff can fairly and adequately protect the interests of the Class because she is asserting the same claims as the Class.

72. Plaintiff can fairly and adequately protect the interests of the Class because she has no interests adverse to the Class.

73. Plaintiff can fairly and adequately protect the interests of the Class because she has retained counsel experienced in class action employment litigation.

74. The common questions of law and fact in this lawsuit predominate over the variations which may exist between members of the Class, if any.

75. Plaintiff and the members of the Class on the one hand, and Defendant on the other, have a commonality of interest in the subject matter of this lawsuit and remedy sought, namely back wages, interest, penalties, attorneys' fees, and costs.

76. If individual actions were required to be brought by each member of the Class injured or affected, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as to Defendant.

77. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

78. The books and records of Defendant are material to the Class's claims because they disclose the hours worked by each member of the Class and the rate of pay for that work.

### COUNT I
### Violation of the Fair Labor Standards Act
### (Collective Action)

79. Plaintiff incorporates here the previous allegations of this Complaint.

80. This count arises from Defendant's violation of the FLSA by failing to pay overtime wages to Plaintiff and Collective Action Members when they worked over 40 hours in individual workweeks.

81. Plaintiff was not exempt from the overtime provisions of the FLSA.

82. Collective Action Members were not exempt from the overtime provisions of the FLSA.

83. Plaintiff was directed by Defendant to work, and did work, over 40 hours in one or more individual workweeks.

84. Other Collective Action Members were directed by Defendant to work, and did work, over 40 hours in one or more individual workweeks.

85. Defendant paid Plaintiff a salary and no overtime compensation.

86. Defendant paid other Collective Action Members a salary and no overtime.

87. Defendant violated the FLSA by failing to pay overtime to Plaintiff at one-and-one-half times her regular rate of pay when she worked over 40 hours in one or more individual workweeks.

88. Defendant violated the FLSA by failing to pay overtime to other Collective Action Members at one-and-one-half times their regular rates of pay when they worked over 40 hours in one or more individual workweeks.

89. Defendant's violations of the FLSA were willful because it received complaints from Care Coordination Employees that alerted Defendant that it was paying one or more of those employees incorrectly.

90. Alternatively, Defendant's violations of the FLSA were willful because it classified other employees who performed many of the same primary duties as Care Coordination Employees as non-exempt from the FLSA's overtime provisions.

WHEREFORE, Plaintiff, on behalf of herself and the Collective Action Members, seeks a judgment against Defendant as follows:

A. All unpaid overtime wages due to Plaintiff and the Collective Action Members;

B. Liquidated damages equal to the unpaid overtime compensation due;

C. Reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit; and

D. Such other relief as this Court deems appropriate.

## COUNT II
### Violation of the New Mexico Minimum Wage Act
### Class Action

91. Plaintiff incorporates here the previous allegations of this Complaint.

92. This count arises from Defendant's violation of the NMMWA for its failure to pay Plaintiff and the Class overtime pay when they worked over 40 hours in individual workweeks.

93. Defendant classified Plaintiff as exempt from the overtime provisions of the NMMWA.

94. Defendant classified the Class as exempt from the overtime provisions of the NMMWA.

95. Plaintiff was not exempt from the overtime provisions of the NMMWA.

96. The Class was not exempt from the overtime provisions of the NMMWA.

97. Plaintiff was regularly directed to work by Defendant, and did work, over 40 hours in individual workweeks.

98. The Class was regularly directed to work by Defendant, and did work, over 40 hours in individual workweeks.

99. Defendant violated the NMMWA by failing to pay Plaintiff and the Class overtime at one and one-half times their regular rates of pay when they worked over 40 hours in individual workweeks.

100. Defendant has violated the NMMWA as part of a continued course of conduct as defined by the NMMWA in N.M. Stat. Ann. in § 50-4-19.

101. Because Defendant violated the NMMWA as part of a continued course of conduct, Plaintiff and the Class are entitled to recover for all violations of the NMMWA without regarding for the statute of limitations and regardless of the date on which they occurred.

WHEREFORE, Plaintiff, on behalf of herself and the Class, seeks a judgment against Defendant as follows:

A. All unpaid overtime wages due to Plaintiff and the Class;

B. Treble damages equal to double the unpaid overtime compensation due;

C. Reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

D. Such other relief as this Court deems appropriate.

Respectfully submitted,

*/s/ Travis M. Hedgpeth*

TRAVIS M. HEDGPETH
Texas Bar No. 24074386
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
P: (281) 572-0727
travis@hedgpethlaw.com

JACK SIEGEL
Jack@siegellawgroup.biz
Texas Bar No. 24070621
Siegel Law Group PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
P: (214) 790-4454
www.4overtimelawyer.com

**Attorneys for Plaintiff and others similarly situated**