IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIA PRUESS and
MARY BATEMAN, individually and
on behalf of all others similarly situated,

      Plaintiffs,

vs.                                       No. CV 19-629 KG/JFR

PRESBYTERIAN HEALTH PLAN, INC.,
and FLUENT HEALTH, LLC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Defendant Presbyterian Health Plan, Inc., (Presbyterian) offers insurance and healthcare coverage to qualified members in New Mexico.  (Doc. 29) at 2.  Defendant Fluent Health, LLC., partners with Presbyterian to provide talent, help with implementing health plans, and assistance with strategy, management, and product design.  *Id.*  Together, Defendants "employ[ed] a wide range of healthcare professionals," including Plaintiffs Dania Pruess and Mary Bateman.  *Id.* at 3.  Plaintiffs allege that during their employment as Care Coordination Employees (CCEs), Defendants misclassified them as "exempt" under the Fair Labor Standards Act (FLSA).  (Doc. 16) at 2.  In pertinent part, Plaintiffs contend that they regularly worked overtime while employed with Defendants but never received "one-and-one half times their regular rate of pay." *Id.*  Plaintiffs commenced this class and collective action asserting violations of the FLSA and the New Mexico Minimum Wage Act (NMWA) to recover their wrongfully withheld overtime wages.  (Doc. 1) at 11-14.

Presently before the Court are Plaintiffs' Motion for Step-One Notice Pursuant to the Fair Labor Standards Act (Motion for Notice) (Doc. 16) and Motion for Equitable Tolling (Doc. 40).

Both Motions are now fully and timely briefed.  *See* (Docs. 29, 44, Responses, and Docs. 38, 45, Replies).  The Court notes jurisdiction under 28 U.S.C. § 1331.  Having considered the parties' briefing, the record, and the relevant law, the Court grants Plaintiffs' Motion for Notice (Doc. 16) and Motion for Equitable Tolling (Doc. 40).

I.      *Procedural Posture*

In their Complaint, Plaintiffs allege that Defendants erroneously classified them and other similarly situated employees as exempt from the overtime provisions of the FLSA.  (Doc. 1) at 9. Plaintiffs contend that they engaged in "non-managerial" work and performed similar "case management and utilization review functions" during their employment with Defendants.  *Id.* at 2.  As a result, Plaintiffs argue that "a class action is an appropriate method for the fair and efficient adjudication of this lawsuit[.]"  *Id.* at 11.

In their Motion for Notice, Plaintiffs request conditional certification to authorize notice to potential opt-in class members.  (Doc. 16) at 6.  In response, Defendants urge the Court to deny Plaintiffs' Motion for Notice because the proposed class is too broad.  (Doc. 29) at 14. Alternatively, Defendants contend that if the Court grants the Motion for Notice, it should sustain their objections and modify Plaintiffs' proposed notice as requested.  *Id.* at 23-25.

Relatedly, in their Motion for Equitable Tolling, Plaintiffs request that the Court "toll[] the statute of limitations for the members of the putative collective action … from [] the date on which Plaintiffs filed their Motion for [] Notice [] until the date on which notice is issued[.]" (Doc. 40) at 1.  In response, Defendants assert that equitable tolling for FLSA cases "should only be applied in rare and exceptional circumstances, which do not exist here."  (Doc. 44) at 2. Thus, Defendants argue that the Court should likewise deny Plaintiffs' Motion for Equitable Tolling.  *See id.* at 4.

2

II.    Standard

   A.  FLSA Notice Requirements

An injured party may institute an action under the FLSA "against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C.S. § 216(b).  However, "[Section] 216(b) does not define the term 'similarly situated,' and there is little circuit law on the subject."  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).  The Tenth Circuit endorsed an "*ad hoc* case-by-case" approach to determine "whether plaintiffs are similarly situated."  *Id.* (internal punctuation omitted) (emphasis in original); *but see In re Chipotle Mexican Grill, Inc.*, 2017 WL 4054144, at *2 (10th Cir.) (explaining that while this approach "is arguably the best" it is not "mandatory within [Tenth] circuit").  Under the *ad hoc* approach, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'"  *Id.*  Then, at the close of discovery, a court moves to the second stage of its analysis, "utilizing a stricter standard of 'similarly situated.'"  *Id.* at 1103 (internal citation omitted).

A court's initial determination "decides whether a collective action should be certified for purposes of notifying potential class members."  *Bustillos v. Bd. Of Cnty. Comm'rs*, 310 F.R.D. 631, 662-63 (D.N.M. 2015).  Importantly, "[i]n deciding whether to certify an FLSA collective action [], the court does not decide the merits of the underlying claims or resolve factual disputes."  *Id.* at 647 (citing *Thiessen*, 267 F.3d at 1106-07).  At this initial stage, the plaintiffs bear the burden of proving that they are "'similarly situated' to other potential class members; however, this burden is not great."  *Id.* at 663.  Indeed, "[a] plaintiff need only describe the potential class within reasonable limits and provide some factual basis from which the court can

determine if similarly situated potential plaintiffs exist." *Id.* (citing *inter alia*, *Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 432 (D. Kan. 2007)).

       *B. Equitable Tolling*

       Absent allegations of willful employer misconduct, the statute of limitations in an FLSA action is two years.  29 U.S.C.S. § 255(a).  However, "[t]he filing of a complaint does not stop the statute of limitations from running in a collective action[.]"  *Abrams v. City of Albuquerque*, 2014 WL 11497810, at *2 (D.N.M.).  Rather, "it is only the [plaintiff's] filing of a consent to opt-in that stops the limitations period from expiring."  *Id.* (citing *Stransky v. HealthONE of Denver, Inc.*, 868 F.Supp. 2d 1178, 1180-81 (D. Colo. 2012)).

       In the Tenth Circuit, a court may toll the statute of limitations "where the circumstances of the case rise to the level of active deception[;] where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts[;] or where a plaintiff has in some extraordinary way been prevented from asserting his or her rights."  *Id.* at *3 (collecting cases) (internal punctuation omitted); *accord Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995) (explaining that "[e]quitable tolling may be appropriate where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights") (internal quotations omitted).  Whether to invoke equitable tolling "in a particular case lies exclusively within the sound discretion of the trial court."  *Abrams*, 2014 WL 11497810 at *3 (internal citations omitted); *accord Million*, 47 F.3d at 389 (holding that "propriety of equitable tolling must be determined on a case-by-case basis").

III.    *Discussion*

   A. *The Motion for Notice*

Defendants organize the putative opt-in class members into three categories: care coordinators, encompassing six job titles; case managers, encompassing five job titles; and utilization management (UM) nurses, encompassing seven job titles.  (Doc. 29) at 3-8 (explaining that the proposed class includes eighteen different CCE job titles).  Plaintiffs explain that the first category, care coordinators, includes only "Health Plan Care Coordinators – PHP's."  (Doc. 38) at 2.  Plaintiffs further note that their proposed class does not include employees who performed "provider-side services," or those hired under "Presbyterian Healthcare Services [] job positions."  *Id.*

Plaintiffs assert that each of these three categories of putative class members—care coordinators, case managers, and UM nurses—performed similar "utilization review and case management functions."  (Doc. 16) at 3.  Plaintiffs explain that these CCE employees performed "no clinical work," and instead engaged in "care management work," like data collection and entry, utilization management, care coordination, and education.  *Id.* at 3-4.  In addition, Plaintiffs clarify that all potential opt-in class members have the same employers:  the two named Defendants.  (Doc. 38) at 2.

With these parameters, the parties identify the proposed class as: (1) Defendants' (excluding "Presbyterian Healthcare Services") salaried "health plan side" CCE employees over the last three years; (2) who performed "care management work," including care coordinators, case managers, and UM nurses (but excluding employees who performed "provider-side

services");[1] (3) that were exempt from overtime pay; (4) who "regularly worked over forty hours a week;" and (5) who did not perform "traditional nursing work" or "clinical work."  *See* (Doc. 38) at 2, 9; (Doc. 16) at 3-5.  The Court is satisfied that identifying the proposed class members in this manner "is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  *See In re Chipotle Mexican Grill, Inc.*, 2017 WL 4054144, at *1 (internal quotation omitted).

### *1. Conditional Certification*

Given the scope of the proposed class, the Court must first ask whether the "care management employees" or "care coordinators, case managers, and utilization management nurses," constitute "employees with similar positions" to qualify for conditional class certification.  *See Landry v. Swire Oilfield Servs., LLC.*, 252 F.Supp. 3d 1079, 1118 (D.N.M. 2017) (framing question as "whether the class[] include[s] 'employees with similar positions'" to warrant certification as collective action).  At this initial "notice" stage for conditional certification, a "court may consider several factors … including whether the potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct."  *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 433 (D.N.M. 2018) (quoting *Bustillos*, 310 F.R.D. at 664).

---

1.      This includes individuals who performed work under the job titles: Utilization review nurse, UR nurse, utilization management nurse, utilization management nurse specialist, utilization management reviewer, UM reviewer, utilization management reviewer – long-term care, care coordinator, care coordinator (I-IV) – care coordination, care coordinator (I-IV) – LTC care coordination, field care coordinator (with different levels), behavioral health care coordinator, field care coordinator, case manager, RN/social worker outpatient case manager, RN – outpatient case manager, RN case manager, and population health case manager.  (Doc. 29) at 1; (Doc. 16) at 3.

The plaintiffs "are only required to allege a colorable basis that the potential class members were subject to a single wage policy or decision." *Id.* at 435-36 (citing *Calvillo v. Bull Rogers, Inc.*, 267 F.Supp. 3d 1307, 1312 (D.N.M. 2017)). The burden at this preliminary stage requires that the plaintiffs proffer "modest" factual support, alleging "similar" but not "identical" potential class members. *Calvillo*, 267 F.Supp. 3d at 1310, 1312 (internal citations omitted). Nevertheless, while the standard is "light or lenient," conditional certification is not "automatic." *Id.* at 1311 (internal citations omitted).

Defendants explain that "care coordinators … initiate outreach to the patients, meet with the patients … and complete an assessment within 30 days." (Doc. 29) at 6. Based on their completed assessments, the care coordinators then create care plans for their patients. *Id.* The care coordinators also provide long-term care for patients, including following up and modifying patient care plans as needed. *Id.* On the other hand, "case managers" are "registered nurses or licensed social workers" who provide inpatient case management in hospitals. *Id.* Case managers "assess" the conditions of admitted patients in the hospital or those who receive treatment at the clinic. *Id.* at 7. Case managers then submit a written assessment to the patients' families, primary care providers, and medical professionals who facilitate the patients' continued care and treatment. *Id.* at 7-8.

Lastly, UM nurses are "licensed registered nurses," that "perform work for members in inpatient facilities, such as hospitals." *Id.* at 8. In pertinent part, the UM nurses "determine whether an inpatient/member's condition(s) meets medical necessity criteria and assist with discharge planning for the inpatient/member." *Id.* Some UM nurses also "approv[e] insurance coverage for elective and prescheduled medical procedures" and review "clinical information …

7

from physicians' offices." *Id.* at 10.  Given their responsibilities and job duties, UM nurses "are required to have clinical knowledge." *Id.* at 8.

These job descriptions echo the responsibilities that Plaintiffs describe in their declarations.  Specifically, Plaintiff Mary Bateman explains that her "job duties as a CCE did not involve providing traditional nursing care in a clinical setting." (Doc. 16-3) at 1.  Rather, Ms. Bateman describes coordinating healthcare benefits for Defendants' approval. *Id.* at 2. Similarly, potential opt-in class member Linda Young submitted a declaration explaining her role as a "Utilization Review Nurse." (Doc. 16-4) at 1.  In this capacity, Ms. Young explains that she "did not [] provide[] traditional nursing or mental health care in a clinical setting[.]" *Id.* Instead, Ms. Young describes performing "care management work" in Defendants' "call center." *Id.* at 2.

While these positions are structured under different job titles, "all [the employees] had essentially the same primary duties." *See Landry*, 252 F.Supp. 3d at 1087.  Specifically, each of the positions require employees to work with patients to "administer health plan benefits" on Defendants' behalf.  (Doc. 38) at 3 (clarifying that "proposed [class] includes health plan, rather than provider-side employees").  Some of these positions involve collaborating with other healthcare professionals or the patients' families, but overall—each employee performs similar "non-clinical case management and utilization review." (Doc. 38) at 8; *accord* (Doc. 29) at 16 (specifying that each position involved "gathering medical and/or clinical information for [] patients and [] members").  In addition, while some employees work in call centers and others in hospitals, they all function as administrative professionals that support Defendants' health insurance and healthcare coverage operations. *See* (Doc. 29) at 3 (explaining that "healthcare professionals" worked towards "ultimate goal of ensuring [] health plan members obtain the

proper care they require while ensuring cost effective use of health plan resources") (internal emphasis omitted).

At this stage, "some variation in the plaintiffs' specific job duties will not destroy a similarly situated designation[.]"  *See Landry*, 252 F.Supp. 3d at 1120 (internal punctuation and quotations omitted).  However, after the parties conduct discovery and Plaintiffs identify the opt-in class members, "Defendants may offer argument about the distinctions between the [] job positions, and why differences such as the level of specialty, educational requirements, and experience matter to certification of the collective action."  *See Deakin*, 328 F.R.D. at 435 (citing *Calvillo*, 267 F.Supp. 3d at 1313).  Defendants' arguments, therefore, are more aptly directed at the "stricter standard" of proving "similarly situated" class members during the second stage of this Court's review, wherein the Court considers "the disparate factual and employment settings of the individual plaintiffs."  *See Calvillo*, 267 F.Supp. 3d at 1310 (citing *Thiessen*, 267 F.3d at 1102-03); (Doc. 29) at 26 (arguing that "[s]ome [employees] work entirely inside a single, in-patient medical facility, while others *never* set foot inside *any* medical facility") (emphasis in original); *id.* at 16 (arguing that each position requires different educational requirements ranging from "high school diploma or equivalent," to "Bachelor's degree and six years of related experience").

Next, "[t]he second inquiry in the similarly-situated analysis is whether the [p]laintiffs have made 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'"  *Landry*, 252 F.Supp. 3d at 1121 (quoting *Thiessen*, 267 F.3d at 1102).  Plaintiffs assert that Defendants' common policy involved the "uniform classification of [CCEs] as exempt" from FLSA protections.  (Doc. 38) at 9.  As evidence of this policy, Plaintiffs submit five sworn declarations.  In pertinent part, these declarations assert that Plaintiffs learned

of Defendants' exemption policy through: "(1) conversations [employees] had with other CCEs who have talked with [them] about their job duties, hours of work, and how Defendant[s] paid them during their employment; (2) training calls/webinars that [they] attended with other CCEs; (3) training seminars [they] attended with other CCEs from across the state; and (4) observing other individuals performing [] similar job duties while working similar hours when [they] worked in a call center environment."  (Doc. 16-4) at 3 (declaration of Linda Young); (Doc. 16-5) at 3 (declaration of Sarah Mullkin).

The Court is mindful of Plaintiffs' burden at this stage—requiring "no actual evidence to be presented but only 'substantial allegations,'" through, for example, allegations in the Complaint and "sworn statements." *See Calvillo*, 267 F.Supp. 3d at 1312.  In considering this standard, the Court concludes that Plaintiffs have demonstrated a colorable claim that Defendants employed a common "exemption" practice sufficient to allege "that the putative class members were together the victims of a single decision, policy, or plan." *See e.g., Landry*, 252 F. Supp. 3d at 1121 (holding that "[p]laintiffs have made substantial allegations that [defendant] had a decision, policy, or plan to not pay [class] members overtime" where defendant "made a company-wide decision to classify 'nearly all' [class members] as exempt from the FLSA's overtime requirements"); *Calvillo*, 267 F.Supp. 3d at 1314 (granting conditional certification where "putative plaintiffs worked for the same employer, performed largely similar duties and their allegations of FLSA violations are derived from the same alleged practices of either not paying for overtime hours worked or miscalculating those hours").

Based on the foregoing, the Court concludes that Plaintiffs satisfied their "lenient burden" at this initial stage in demonstrating that the opt-in class members are "similarly situated." *See Calvillo*, 267 F.Supp. 3d at 1314 (explaining that "similarly situated inquiry …

requires only a colorable basis showing the putative class members are victims of a single decision, policy or plan"). For each of these reasons, the Court grants Plaintiffs' Motion to Certify (Doc. 16). As a result, this case shall be postured as a conditionally certified collective action under the FLSA.

### 2. *Proposed Notice*

Next, having granted Plaintiffs' Motion to Certify, the Court addresses Defendants' objections to Plaintiffs' proposed notice. *See* (Doc. 29) at 22-25. Because any opt-in plaintiff must consent to join a collective action in writing, "counsel representing parties in FLSA actions send prospective class members notices to inform them about the lawsuit." *Felps v. Mewbourne Oil Co., Inc.*, 460 F.Supp. 3d 1232, 1240 (D.N.M. 2020) (quoting *Aguilar v. Mgm't & Training Corp.*, 2017 WL 4277139, at *6 (D.N.M.)). It is within the district court's discretion "to approve the content of FLSA class notices." *Id.* (quoting *Aguilar*, 2017 WL 4277139, at *6).

Defendants present several objections, regarding both the form of the notice and the information Plaintiffs request to facilitate notice. (Doc. 29) at 22-25. Plaintiffs do not proffer any substantive response to Defendants' objections, other than proclaiming their general preference to use "the language of their choice" in the notice. (Doc. 38) at 11-12. The Court addresses each of Defendants' objections in turn.

### a. *"Meet and Confer" Request*

Defendants request that the Court "require the parties to meet and confer" to discuss Plaintiffs' proposed notice. *Id.* at 22. The Court appreciates this sentiment, but two problems plague Defendants' suggestion. First, as noted above, time is of the essence. *See supra* § II(B) Equitable Tolling. Plaintiffs' claims "continue to die daily" because the statute of limitations does not stop until a potential plaintiff opts in. *See* (Doc. 40) at 2 (quoting *Hoffman v. Sbarro,*

*Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y. 1997)).  As a result, directing the parties to meet and confer and thus, requiring a further delay, would unduly prejudice Plaintiffs.  Second, "[t]his Court's local rules already require that parties make a good-faith request for concurrence prior to filing a motion."  *See Calvillo*, 267 F.Supp. 3d at 1314 (citing D.N.M.LR-7.1(a)).  The parties are always encouraged to confer to find resolutions that do not require judicial intervention. Unfortunately, however, the time for doing so has passed, and any further mandate to meet and confer would undermine the propriety of the Local Rules.  The Court, therefore, denies Defendants' request to meet and confer.

### b.  *Defendants' Position*

Next, Defendants contend that "[t]he [n]otice does not accurately describe Defendants' position and defenses[.]"  (Doc. 29) at 23.  Instead, Defendants request that they "be allowed to describe their various defenses, including that many in the proposed class did not work over 40 hours per week, and [] that Defendants complied with the FLSA and New Mexico law in good faith."  *Id.*  Notably, the Honorable William Johnson added similar language to an FLSA plaintiffs' notice at the defendant's request.  *Calvillo*, 267 F.Supp. 3d at 1315.

In *Calvillo*, Judge Johnson amended the plaintiffs' notice to include the statement that "[the defendant] denies the[] allegations and contends it properly paid its employees overtime for all hours worked at the legally required rate."  *Id.*  In reasoning that the defendant's proposed language should be included, Judge Johnson opined that "[t]his modified form of [n]otice comports with notices used in other FLSA collective actions and approved by this district."  *Id.* at 1315-16 (citing *Landry*, 252 F.Supp. 3d at 1113); *accord Aguilar*, 2017 WL 4277139, at *8 (recommending that "in the interests of proportionality and communicating information to putative collective members without chilling their decision whether to opt into this suit … the

presiding judge [should] allow both parties two sentences to either explain the suit or communicate their specific denials" in FLSA notice). This Court finds *Calvillo* instructive.

Given the consensus in this district that such language is appropriate and Defendants' modest request for only two sentences, the Court sustains Defendants' objection. As a result, Plaintiffs are instructed to amend their notice to reflect this change:

2. What is this lawsuit about?

….. The Company denies the allegations in the lawsuit *and contends that many Care Coordination Employees did not work over 40 hours per week. The Company therefore claims it complied with the FLSA and New Mexico law in good faith.*

*See* (Doc. 16-8) at 1 (emphasizing added text).

### c.   *Discovery Obligations*

Next, Defendants request that the notice advise the potential opt-in plaintiffs that they "may be required to engage in discovery, including answering interrogatories, producing documents and responding to Requests for Production, or testifying by deposition or at trial." (Doc. 29) at 24. The Court recognizes its duty under the FLSA to "ensure that the notice is fair and accurate[.]" *Landry*, 252 F.Supp. 3d at 1127. In addition, the Court balances the principles of fairness and accuracy with the general notion that courts "should not alter plaintiff's proposed notice unless such alteration is necessary." *Id.*

The Court sustains this objection because Defendants' proposed language is narrowly drafted and neutral. Furthermore, the amendment's language promotes both fairness and accuracy by informing the putative class members of their potential responsibilities. As a result, Plaintiffs are instructed to amend their notice to reflect this change:

6. What happens if I join the lawsuit?

13

> *…. You may be required to engage in discovery, including answering written questions, producing documents, or testifying in a deposition or at a trial.*

*See* (Doc. 16-8) at 1 (emphasizing added text).

### d. Potential Costs

Defendants next request that the notice "apprise potential opt-ins that they could be liable for Defendant[s'] costs associated with the lawsuit if Defendant[s] prevail[]." (Doc. 29) at 24. Notably, the Honorable James Browning previously assessed whether an FLSA notice to potential opt-in plaintiffs should include a provision regarding costs. *Landry*, 252 F.Supp. 3d at 1127-28. After analyzing the current law, Judge Browning concluded that "because costs possibly could be awarded to the prevailing party, fairness and accuracy require that potential class members be informed of that possibility." *Id.* at 1128. However, to "assuage the [p]laintiffs' concern that such a warning may dissuade people from exercising their rights," Judge Browning modified the language of the warning "to reflect that liability for court costs does not mean that the [p]laintiffs would be responsible for [defendants'] attorney fees." *Id.*

This Court is persuaded by Judge Browning's compromise in *Landry*. In addition, the Court finds this approach promotes judicial consistency. *See Calvillo*, 267 F.Supp. 3d at 1315-16 (citing *Landry*, 252 F.Supp. 3d at 1113) (approving FLSA notice provisions that were "used in other FLSA collective actions and approved by this district"); *see also Aguilar*, 2017 WL 4277139, at *9 (explaining that in "Tenth Circuit, courts regularly include a notice that plaintiffs may have to pay costs if they do not prevail") (collecting cases).

As a result, Plaintiffs are instructed to amend their notice to reflect this change:

6. What happens if I join the lawsuit?

> *…. If the Care Coordination Employees lose, they could be responsible for paying court costs and expenses (not including the Company's attorney fees).*

*See* (Doc. 16-8) at 1 (emphasizing added text).

*e.  Defense Counsel's Contact Information*

Defendants also request that the notice "include contact information for Defendants'

counsel."  (Doc. 29) at 24.  Defendants reason that to "preserve[] the appearance of judicial

neutrality, [the notice] should include contact information for Defendants' counsel as well [as

Plaintiffs' counsel]."  *Id.*  The Court notes, however, that the proposed notice includes the

following message:

> **THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES**
> **DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO. THE**
> **COURT HAS TAKEN NO POSITION ON THE MERITS OF THIS**
> **LAWSUIT.**

(Doc. 16-8) at 2 (emphasis and capitalization in original).  Defendants do not indicate how this

statement fails to sufficiently "preserve the appearance of judicial neutrality," such that the

notice must also list defense counsel's contact information.  *See Aguilar*, 2017 WL 4277139, at

*7-8 (explaining that notice "already contains similar language" and defendants' objection is,

therefore, moot because "no live controversy exists").

In addition, the Court notes that providing defense counsel's contact information may

confuse putative class members.  The opt-in class members are Defendants' adversaries and,

thus, should not contact defense counsel.  *See* ABA Model Rule of Professional Conduct 4.2

(1984) (explaining that "lawyer shall not communicate about the subject of the representation

with a person the lawyer knows to be represented by another lawyer in the matter").  The Court

concludes that this confusion outweighs Defendants' allegations of partiality.

Nevertheless, in honoring the spirit of Defendants' request, the Court instructs Plaintiffs

to include a sentence in their notice that "the Company is represented by its own lawyers."  This

compromise informs the putative class members that Defendants are represented by counsel but

15

abstains from unnecessarily providing their contact information. *Cf. Aguilar*, 2017 WL 4277139, at *7 (framing the Court's twin duties as "communicat[ing] its neutrality" and "convey[ing] that the notice itself is a court document").

### f.   Right to Select Counsel

Next, Defendants request that the notice "advise potential opt-ins that they have a right to select their own counsel if they so choose." (Doc. 29) at 24. Plaintiffs' proposed notice, however, adequately explains that opt-in members are "free to file [their] own lawsuit, either on [their] own behalf or through an attorney." (Doc. 16-8) at 1-2. The Court finds that any further mention of a putative class member's right to hire their own attorney would be duplicative. *See e.g., Calvillo*, 267 F.Supp. 3d at 1316 (striking language in notice that "may be misleading to an individual whose intention is to opt-in"). Therefore, Defendants' objection is overruled.

### g.   Requests for Production

Defendants contend "Plaintiffs' request for production of employee information within three (3) days is unduly burdensome." (Doc. 29) at 24. Instead, "Defendants request a minimum of thirty (30) days to prepare and deliver the class information in the event conditional certification is granted." *Id.* Notwithstanding Defendants' request, Courts in this district ordinarily afford a defendant ten days to produce potential plaintiffs' names and known contact information. *See Felps*, 460 F.Supp. 3d at *7 (ordering defendant to produce information "no later than 10 days from the date of entry" of court's order); *Landry*, 252 F.Supp. 3d at 1128 (ordering that defendant "produce all potential plaintiffs' names and known contact information within ten days"). This ten-day mandate strikes a balance between Plaintiffs' requested three days and Defendants' requested thirty days. The Court, therefore, overrules Defendants'

objection and directs Defendants to produce the requested contact information within ten days from entry of this Order.

### h.   Company email addresses

Lastly, Defendants "object to producing company-provided email addresses."  (Doc. 29) at 24-25.  Defendants argue "dissemination of the [n]otice via company-provided email addresses would likely cause confusion" because these "email addresses are intended for business purposes only[.]"  *Id.* at 24.  Notably, however, Plaintiffs have not requested that Defendants produce the potential class members' company-provided email addresses.  *See* (Doc. 38) at 13 (requesting production of "email addresses" generally, without specifying "company-provided"); (Doc. 16) at 16-18 (same).  Given the lack of dispute on this issue, the Court finds Defendants need not produce company-provided email addresses but, must provide the potential class members' personal email addresses if within their possession.

### 3. Conclusion

In conclusion, the Court approves the proposed notice to the putative class members as modified above.  Defendants are directed to produce the names, job titles, start and end dates, last known addresses, personal e-mail addresses, and telephone numbers for all salaried "health plan side" CCE employees over the last three years.  Defendants must send Plaintiffs the information in a useable and easy-to-navigate electronic format within tens days from entry of this Order.  Plaintiffs may then send notice to the identified class members via email, text message, or through first-class mail.  Plaintiffs must send notice within ten days of receiving the class list and employee information from Defendants.  Any putative members who wish to join the lawsuit must return or postmark their consent form within 63 days of receipt.  *See* (Doc. 16-8) at 1 (directing putative class members to return consent within 63 days from date of mailing).

B.   *Equitable Tolling*

In their Motion for Equitable Tolling, Plaintiffs request that the Court toll the statute of

limitations period from the date their Motion for Notice was filed until notice is issued to the

putative class members.  (Doc. 40) at 1-4.  Plaintiffs explain that because the statute of

limitations period does not stop running until a putative plaintiff opts-in, the Court's delay in

granting notice may effectively bar potential class members from recovering.  *Id.*  In response,

Defendants argue that the Court's delay in deciding Plaintiffs' Motion for Notice "which occurs

in every collective action case, is not sufficient cause to toll the statute of limitations."  (Doc. 44)

at 3 (collecting cases).  As a result, Defendants urge the Court to deny Plaintiffs' Motion for

Equitable Tolling.  *Id.* at 7.

To join an FLSA case, "an individual must file his or her consent to opt into the

collective action within the relevant two- or three-year limitations period."  *Felps*, 2020 WL

2520136, at *4 (citing *Abrams*, 2014 WL 11497810, at *2).  The statute of limitations does not

stop running until a putative plaintiff files their notice of intent to join the collective action.

*Abrams*, 2014 WL 11497810, at *2 (citing *Stransky*, 868 F.Supp. 2d at 1180-81).  The Tenth

Circuit has not addressed whether equitable tolling is warranted under the FLSA.  *Id.* at *9

(explaining that "Tenth Circuit has not answered the question whether tolling is appropriate

during the period in which a court considers a motion to certify a class").  However, "[t]he

majority of courts have held that equitable tolling is an available remedy under the FLSA,

provided that the circumstances warrant application of the doctrine."  *Aguilar*, 2017 WL

4277139, at *11.

In this district, courts have found a "delay in the Court's decision-making process,

occasioned by its busy docket … [is] beyond the control of [p]lainitff and the potential class

members," and thus, may warrant equitable tolling.  *Born v. Progrexion Teleservices, Inc.*, 2020

WL 5803320, at *3 (D. Utah) (analyzing *Felps*, 2020 WL 2520136, at *5).  Principally, "[t]hose

courts holding that a delay pending determination of a motion for certification is sufficient to toll

the statute of limitations generally reason that the delay is 'extraordinary' and that tolling is

equitable because the time lapse was not caused by the plaintiffs."  *Abrams*, 2014 WL 11497810,

at *6 (collecting cases).

       This Court agrees with the position adopted in this district:  equitable tolling is an

available remedy under the FLSA.  *See Felps*, 2020 WL 2520136, at *6 (tolling "limitations

period for any opt-in class member from the date on which [p]laintiff filed his original motion

through the date on which [court's] … [o]rder is entered"); *Aguilar*, 2017 WL 4277139, at *11

(explaining that "majority of courts have held that equitable tolling is an available remedy under

the FLSA"); *Abrams*, 2014 WL 11497810, at *12 (holding that "doctrine of equitable tolling is

available to [p]laintiffs to toll the claims of the putative class members").  In concluding that

such relief is available, the Court next analyzes whether it is warranted in this case.  *See Abrams*,

2014 WL 11497810, at *3, *9 (explaining that while equitable tolling is available under FLSA, it

is not "automatic" or "routine" and must be decided on "case-by-case basis").  The Court

answers this inquiry in the affirmative.

       First, "Plaintiffs diligently pursued their legal rights to assert equitable tolling."  *See id.* at

*8.  Plaintiffs filed their Motion for Notice one week after filing their Amended Complaint.

*Compare* (Doc. 13) (Amended Complaint, filed November 13, 2019) *with* (Doc. 16) (Motion for

Notice, filed November 19, 2019).  This is not a case, for example, where a court may generally

be "much less forgiving … where the claimant failed to exercise due diligence in preserving his

[or her] legal rights." *See Abrams*, 2014 WL 11497810, at *8 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Second, "[t]he Court's delay constitutes an 'extraordinary circumstance[.]" *Id.* at *9. Illustratively, the *Abrams* court found that a delay of over one year was extraordinary, "undue," and "not simply routine." *Id.* at *10; *accord Felps*, 2020 WL 2520136, at *5 (opining that delay of 14 months "is sufficiently protracted to constitute an extraordinary circumstance meriting the application of the doctrine of equitable tolling") (internal quotations omitted). On the other hand, the *Aguilar* court found that a delay of two months was "unextraordinary." 2017 WL 4277139, at *13.

Here, approximately one year has elapsed from the date Plaintiffs filed their Motion for Notice until the Court's entry of this Order. This time period is more akin to the "undue" delay found in *Abrams* and *Felps*, rather than the two-month "unextraordinary" delay in *Aguilar*. Furthermore, the Court notes that the one-year period to consider Plaintiffs' Motion to Certify constitutes half of the two-year statute of limitations period. A contrary holding would posture the viability of a plaintiff's cause of action on the Court's busy docket schedule. This Court declines to find that the FLSA intended such a result.

Lastly, the Court notes that Defendants have not argued, and the facts do not illustrate, that they would suffer prejudice or surprise by tolling the statute of limitations. Rather, "Defendant[s] w[ere] aware of the claims when Plaintiffs filed their lawsuit, [] and Defendant[s] also w[ere] aware, by virtue of the complaint's class allegations, that opt-in plaintiffs might join the suit." *See Abrams*, 2014 WL 11497810, at *11. As a result, "the concerns to which statutes of limitations are addressed, namely, 'to ensure fairness to defendants and to notify them of

claims that they must defend before the claims grow stale,' were not at issue." *Felps*, 2020 WL 2520136, at *5 (quoting *Abrams*, 2014 WL 11497810, at *11).

In sum, the Court concludes, consistent with the conclusion reached by other courts in this district, that equitable tolling is an available remedy under the FLSA if warranted by the circumstances.  Furthermore, the Court concludes that a delay of approximately one year— dovetailing with Plaintiffs' diligent filing of their Motion for Notice and the absence of prejudice to Defendants—constitutes an undue and extraordinary circumstance that warrants equitable tolling.  Accordingly, the Court further concludes that Plaintiffs are entitled to toll the statute of limitations from November 19, 2019, through the date notice issues to the putative class members.

IV.     *Conclusion*

Based on the foregoing, the Court concludes that Plaintiffs' Motion for Notice (Doc. 16) is granted.  This action is conditionally certified as a collective action under the FLSA. Moreover, Defendants are directed to send Plaintiffs the approved information for the putative class members within ten days from entry of this Order.  Plaintiffs shall send notice to all putative class members within ten days of receipt of the requested information from Defendants. Any putative class members who wish to opt-in must return or postmark their consent within 63 days of receipt.

It is further ordered that Plaintiffs' Motion for Equitable Tolling (Doc. 40) is granted. The statute of limitations is, therefore, tolled from November 19, 2019, until Plaintiffs issue notice to the putative class members.  Plaintiffs are directed to file a Status Report on the record advising the Court when notice is issued.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE