## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DANIA PRUESS, MARY BATEMAN,**
**LINDA VARGAS MARTINEZ, AND**
**DAVID GALLEGOS on behalf of**
**themselves and all others similarly**
**situated,**

      **Plaintiffs,**

    **v.**                    **No.  CIV 19-629 DHU/JFR**

**PRESBYTERIAN HEALTH PLAN,**
**INC., and FLUENT HEALTH LLC,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER
## GRANTING ATTORNEY FEE AWARD

**THIS MATTER** comes before the Court regarding its recent decision granting Plaintiff's motion to compel and order for costs.  *See* Doc. 138.  Plaintiffs have submitted their petition for fees and the matter is fully briefed.  Docs. 140, 149, 154.  Having reviewed the parties' submissions, the Court finds that Plaintiffs' request for attorneys' fees is granted in part. The Court will award $35,531.33 in attorney's fees.

## BACKGROUND

In its recent decision, the Court found that Defendants' withholding of discoverable material, which prompted Plaintiffs to file their motion to compel, was sufficiently culpable to warrant the awarding of costs to Plaintiffs.  Doc. 138.  In their petition for fees, Plaintiffs explain that they served written discovery on Defendants in April 2021, which was answered by Defendants in early July.  The parties then engaged in various communications concerning the

1

alleged discovery deficiencies.[1]  The parties appeared before the Court on September 30, 2021 for an informal discovery dispute conference, which led to some agreement on document production, but Plaintiffs explain that Defendants still failed to produce many of the documents prior to the deadline to file the motion to compel.  *Id*. at 2.  Plaintiffs then filed their motion to compel, which came before the Court for hearing on January 6, 2022.  This Court issued its order on January 12, 2022, granting in part Plaintiffs' motion to compel and authorized the imposition of fees against Defendants.  Doc. 138.

Plaintiffs attach to their petition the billing records of three attorneys, which records demonstrate that Plaintiffs have expended "more than 169 hours attempting to resolve the discovery disputes with Defendants and briefing the motion to compel."  *Id*. at 3.  Plaintiffs explain that they have reduced the hours to 97.5, reflecting time expended by two of the three attorneys:  Ms. Arendt and Mr. Hedgpeth.  Additionally, Plaintiffs explain that they have discounted or eliminated various categories of billed time: time spent trying to obtain emails and other ESI; time spent scheduling and noticing depositions; time spent addressing related deficiencies in Defendants' production; time spent preparing the petition; and time expended by other attorneys and paralegals.  *Id.* at 4-6.  Finally, Plaintiffs seek hourly rates of $450/hr for Ms. Arendt and of $600/hr for Mr. Hedgpeth and cite to other cases where courts have found their rates reasonable.  *Id*. at 8.  Plaintiffs attach Declarations of attorneys Arendt, Hedgpeth and Seigel, along with detailed timekeeping records of work expended on this matter.  Docs. 140-1; 140-2; 140-3.[2]

---

[1] Plaintiffs' counsel attach billing records which demonstrate that the first billable event occurred on July 20, 2021. Doc. 140-1, at 9; Doc. 140-2 at 8

[2] All of attorney Siegel's time entries are "No Charge," so the Court will not evaluate the reasonableness of Mr. Siegel's billing.

Defendants object to Plaintiffs' petition, claiming that the fees requested are unreasonable, excessive and duplicative since Plaintiffs simply prepared a 12-page motion and a 12-page reply.  Doc. 149 at 1; 5-10.  Defendants object to Plaintiffs' attorneys' duplicative billing, i.e. billing separately for the same task, *id.* at 6-7, as well as to non-specific "block billing" which fails to specify whether work being done related to the motion to compel or to general discovery.  *Id.* at 7.  Defendants object to fees associated with "time spent performing work that would have been required whether [or not] the motion to compel was filed, such as time spent reviewing supplemental disclosures and document productions."  *Id.* at 8 (citing Lynn Decl.).  Defendants object to fees incurred in the meet and confer process, *id.* at 9, as the "vast majority of the discovery issues on which the parties met and conferred were resolved and were not included in the motion to compel."  *Id.* at 9 (citing Lynn Decl.).

Defendants further state that the hourly rates requested are not reasonable in this jurisdiction, and point to other cases from the District of New Mexico where hourly rates far less than those requested by Plaintiffs' attorneys were approved.  *Id.* at 2-5.  Defendants claim that the subject of the litigation is not so unusual that only out-of-state counsel would be qualified. *Id.* at 3.  Defendants state that reduced fees are appropriate because their objections were substantially justified, some of their objections were sustained, and the scope of the relief granted was narrower than originally sought.  *Id.* at 10-21 (discovery responses justified based on limited evidentiary value of information sought, the "incredibly burdensome process" to produce the time-stamp data, delays caused by the pandemic and Defendants' primary obligation to provide healthcare services, delays caused by the sheer quantity of materials sought and produced, misrepresentation of the ESI dispute by Plaintiffs to the extent that the matter was not "ripe" in

October 2021).  Defendants request that the Court award "no more than $5,000 for preparing their motion to compel."  *Id.* at 1.

By way of their reply, Plaintiffs submit that Defendants' response is a veiled attempt to seek reconsideration, and therefore is beyond the scope of the briefing and should be disregarded.  Doc. 154 at 2-4.  Plaintiffs state that a document-intensive, hybrid class-collective action case requires far more collaboration among attorneys than most cases, *id*. at 4-5, that counsel's rates are reasonable, and that the level of specialization and expertise required is such that local counsel doesn't meet that requirement.  *Id*. at 5-8.  Plaintiffs claim few other attorneys in the country possess their level of expertise and experience in hybrid class-collective wage and hour cases.  *Id.* at 8.

## LEGAL STANDARDS REGARDING ATTORNEY FEES

This Court has discretion to determine the amount of a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar is " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances."  *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley*, 461 U.S. at 433, and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543-44 (2010)).  "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates."  *United Phosphorus, Ltd. v. Midland Fumigant,*

*Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000).  Once the Court makes these two determinations, "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *City of Edmond*, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community."  *New Mexico v. Valley Meat Co., LLC*, 2015 WL 9703255, at *23 (D.N.M. Dec. 14, 2015)(quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006)).  The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates.  *See Lippoldt*, 468 F.3d at 1225.  Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work.  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1255-56 (10th Cir. 1998).  Courts may also consider their own knowledge of market rates.  *See Lippoldt*, 468 F.3d at 1225.

Additionally, the party seeking fees "should submit evidence supporting the hours worked and rates claimed."  *Hensley*, 461 U.S. at 434.  There is no precise rule or formula for a court's adjustment of the lodestar; rather, courts have discretion in making this equitable judgment.  *Hensley,* 461 U.S. at 436-37.  The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation.  *Farrar v. Hobby*, 506 U.S. 503, 120-22 (1992); *also see General Protecht Grp., Inc. v. Leviton Manufacturing Co.,* 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level.").  In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award."  *Hensley* , 461 U.S. at 438.

**ANALYSIS**

Defendants' raises three primary objections: (1) Plaintiffs seek fees for work that was unreasonable, excessive and/or duplicative; (2) Plaintiffs' hourly rates are not reasonable in this jurisdiction; and (3) Defendants' objections and the non-disclosure of certain documents were substantially justified, some of Defendants' objections were sustained, and the scope of the relief that was granted was narrower than what was initially sought. Doc. 149 at 1. The Court will address these arguments in order.[3]

1. **WHETHER THE WORK PERFORMED AND BILLED BY PLAINTIFFS' COUNSEL WAS EXCESSIVE, DUPLICATIVE OR UNREASONABLE**

Plaintiffs have limited their fee request to time spent by attorneys Arendt and Hedgpeth, specifically related to the written discovery request that ultimately resulted in Plaintiff's motion to compel. These two attorneys request fees for 97.5 hours, Doc. 140 at 7, even though their total hours expended on this issue amount to 134 hours. *Id.* at 2. Additionally, Plaintiffs specifically omit from their fee request the time spent by other attorneys and staff who worked on this issue, which time amounts to roughly 25 hours. *Id.* The Court has carefully reviewed the declarations of counsel, as well as their attached billing records, for reasonableness, excessiveness, and/or duplication.

a. The Court Will Award Some, but Not All, Time Spent Meeting and Conferring

First, Defendants invite this Court to limit the fee award to the reasonable amount of time it would take Plaintiffs to write a motion to compel and reply, without accounting for any time

---

[3] Defendants also spend over one-half of their response attempting to justify their actions throughout the discovery dispute, prompting Plaintiffs to complain that Defendant's response is a "thinly veiled request for reconsideration." Doc. 154 at 1. To the extent that Defendants seek reconsideration of the Court's sanctions order, that request is denied. Nonetheless, Rule 37 provides that the court must not order payment by the "party… whose conduct necessitated the motion" before giving that party "an opportunity to be heard," or if that party's "nondisclosure, response or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A). That "opportunity" took place on January 6, 2022 at hearing on the motion to compel. Nonetheless, the Court will still consider Defendants' arguments in their response to Plaintiff's petition that seek to lessen the amount to be paid, if not convince the court to reverse its order of sanctions.

spent in the meet and confer process leading up to the filing of the motion.  The Court notes a split among decisions over whether meet and confer time is recoverable as expenses awarded pursuant to Rule 37(a)(5).  *Compare Miller v. Paschall Truck Lines, LLC*, Civ. 20-303 GBW/SCY, 2021 WL 919868, at *2 (D.N.M. Mar. 10, 2021) (not awarding expenses incurred meeting, conferring, and corresponding with opposing party about a discovery dispute), *and VanMeter v. Briggs*, CV 18-0970 RB/JHR, 2020 WL 954771, at *3 (D.N.M. Feb. 27, 2020) (same), *and Lifetime Prods., Inc. v. Russell Brands, LLC*, Case No. 1:12-cv-00026-DN-EJF, 2016 WL 5349728, at *2 (D. Utah Sept. 23, 2016) (gathering cases for the proposition that courts do not award fees or expenses arising from the meet and confer process), *with Pistone v. N.M. Pub. Def. Dep't*, No. 13-cv-0920 MV/SMV, 2015 WL 13666991, at *2 (D.N.M. Feb. 25, 2015) (awarding expenses arising from the meet and confer process), *and DCD Partners, LLC v. Transamerica Life Ins. Co.*, Case No. 2:15-cv-03238-CAS (GJSx), 2018 WL 6252450, at *3 (C.D. Cal. June 13, 2018) (same).

In *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), the Supreme Court held that "the court can shift only those attorney's fees incurred because of the misconduct at issue" when sanctioning that misconduct under the Federal Rules of Civil Procedure. 137 S Ct. at 1186 & n.5; *see also id.* at 1187 ("The [sanctioning] court's fundamental job is to determine whether a given legal fee ...would or would not have been incurred in the absence of the sanctioned conduct.  The award is then the sum total of the fees that, except for the misbehavior, would not have accrued.").  The Supreme Court cautioned, though, that trial courts "need not, and indeed should not, become green-eyeshade accountants" when determining the causal relationship between sanctioned conduct and a claimed legal fee.  *See id.* at 1187.  "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection," so "a district court

may take into account its overall sense of a suit [and] decide ... that all (or a set percentage) of a particular category of expenses ... were incurred solely because of a litigant's bad-faith conduct." *Id.* (internal quotation marks and brackets omitted).

The Tenth Circuit has stated that Rule 37(a)(5) only includes "reasonable expenses incurred ... in *filing or opposing a discovery motion*." *Centennial Archaeology*, 688 F.3d at 678 (emphasis added). One could read this phrase to exclude reimbursement for meeting and conferring before drafting a discovery motion. *See VanMeter*, 2020 WL 954771, at *3. Nonetheless, the Court is mindful that a certain amount of meeting and conferring would not have occurred but for the discovery dispute that ultimately resulted in the filing of a motion to compel, and the Court has a difficult time completely discounting all of that time, simply because it predated the filing of the motion. In fact, it is expected that a party will engage in the meet and confer process throughout the discovery process, while it is also understood that more time is expended when the parties encounter a dispute that results in the filing of a motion to compel. Accordingly, the Court will use a blended approach and reduce the compensable time—in the meet and confer category only—by 50%.

Attorney Arendt submits 42 entries starting on July 20, 2021, through January 6, 2022, while attorney Hedgpeth lists 29 entries from the same date-range.[4] See Docs. 140-1 at 9-13; Doc. 140-2 at 8-9. In determining which entries qualify as "Meet and Confer," the Court is limited to the description provided by the attorney. Even though the entries are somewhat non-descriptive,[5] they provide the Court a sound basis to conclude if the work performed was actually meeting and conferring, as opposed to, say, reviewing documents and preparing legal filings.

---

[4] The Court only considers time entries that result in fees, and disregards those that the attorney lists as "No Charge."

[5] By way of examples, attorney Arendt bills 1:20 on September 14, 2021, which is described as "Poke OPC; respond to OPC; email Court to set up discovery conference; respond to Court." The Court places this entry in the "meet and

For attorney Arendt, the Court includes the following time entries in the "Meet and Confer" category:

| DATE | TIME | DATE | TIME |
|---|---|---|---|
| 07/20/21 #1 | 0:50 | 09/20/21 #1 | 1:30 |
| 07/28/21 | 0:10 | 10/15/21 #1 | 0:40 |
| 07/29/21 #1 | 1:00 | 10/21/21 #1 | 1:40 |
| 07/30/21 #2 | 3:00 | 10/28/21 | 1:10 |
| 08/03/21 | 0:30 | 11/04/21 | 1:10 |
| 08/10/21 | 0:20 | 11/05/21 #1 | 0:40 |
| 08/31/21 | 2:10 | 11/15/21 #4 | 1:00 |
| 09/02/21 | 1:40 | 12/03/21 | 1:20 |
| 09/14/21 #1 | 1:20 | 12/29/21 | 0:40 |
|  |  | **TOTAL** | 20:50 |

For attorney Hedgpeth, the Court includes the following time entries in the "Meet and Confer" category:

| TIME | DATE | TIME | DATE |
|---|---|---|---|
| 07/20/21 | 0:40 | 08/18/21 #1 | 0:20 |
| 07/22/21 | 0:10 | 08/30/21 | 0:30 |
| 07/28/21 | 0:10 | 10/11/21 #2 | 1:30 |
| 07/29/21 | 0:20 | 10/11/21 #3 | 0:40 |
| 07/30/21 #2 | 1:30 | 11/04/21 | 0:10 |
| 07/31/21 | 0:40 | 12/10/21 | 2:10 |
| 08/04/21 | 0:20 |  |  |
|  |  | **TOTAL** | 9:10 |

Thus, the total meet and confer hours billed by the two attorneys is 30:00 hrs.

---

confer" category since the attorney appears to be conferring with opposing counsel regarding the upcoming discovery conference; nonetheless, it isn't clear if the entire entry pertains to that conference or to other matters. Attorney Arendt's time entry for September 20, 2021 also suffers from over-breadth: there are clearly communications between counsel, but there also appear to be legal writing and filing. Finally, attorney Arendt appears to engage in some meeting and conferring on October 15, 2021, yet it appears that some of that date's 0:40 entry was spent on other work. These are three examples of where the Court struggled to identify time the attorneys actually spent meeting and conferring, but because the Court has determined that some but not all time spent meeting and conferring is compensable, it concludes that awarding 50% of requested fees for these time entries is appropriate.

Again, the Court understands that there is a measure of subjectivity in placing a given time entry into a particular category.  Nevertheless, the Court believes its approach is fair to both sides, especially given that the work description is at times minimal and difficult to categorize.[6]  By reducing by 50% Plaintiffs' meet and confer hours, the Court will award Plaintiffs attorney fees for this category of time for 15 hours (or half of the 30 hours categorized by the Court as "meet and confer").

    a.  <u>Non-Specific Entries</u>

Here, the Court has meticulously reviewed the timekeeping records of attorneys Arendt and Hedgpeth.  While the vast majority of the entries appear to appropriately relate to the parties' discovery dispute that ultimately resulted in the filing of the motion to compel, some are non-specific.  References to "motion to compel," "discovery deficiencies," "discovery issues" and "outstanding documents" are fairly self-explanatory and appropriately billed and compensable herein, i.e., as related to this discovery dispute.  Nonetheless, the Court can point to some vague entries that leave the Court wanting for more precise descriptors.

For example, on August 31, 2021, attorney Arendt bills 2:10 hrs for "Review OPC's email and additional documents and save; email Doug and Maureen"; on November 4, 1:10 hrs for an undefined and non-specific "call with OPC; recap w/ Travis; prep for call with OPC; message Maureen re call; call w/ Travis to follow up after call with OPC; edit email from Travis and circulate."  There is no reference to the instant discovery dispute or motion to compel, and the Court is left to wonder if the email, call or additional documents were related to this discovery dispute, or to some other matter germane to the discovery process.  On November 15, 2021, attorney Arendt seeks compensation for 1:10 hrs spent on tasks associated with

---

[6] *See e.g.* fn. 4, supra.

Defendants' "Fifth Supplemental Disclosures" which include reviewing time records, updating an index, reviewing the disclosures, and passing the project on to "MR."  And on December 3, 2021, attorney Arendt bills 1:20 hrs for work described as: "Review email from OPC; call w/ Jack; email OPC Trey re NCQA documents and deliverables; update Def's production index; draft stipulation to extend deadline to file motion to compel."  *See* Doc. 140-1 at 12-13. Similarly, there are some entries in attorney Hedgpeth's timekeeping records that are not clearly related to the instant discovery dispute, such as "Review Defendants' second supplemental disclosure statement" (9/27/2021); "Review Fourth Supplemental Disclosures from Defendant" (0:10 hrs, 11/5/2021); "Review fifth supplemental disclosures from Defendant" (0:10 hrs, 11/12/2021).  The lack of specificity makes it difficult for the Court to conclude that these entries relate to work performed on this discovery dispute.

Because the Court is unable to draw a clear connection between some time entries and the motion to compel, the Court will modestly trim the attorneys' bill by 5 hours.

      b.  <u>Whether Plaintiffs' Attorneys Improperly Billed for Duplicated Efforts</u>

The Defendants complain that attorneys Arendt and Hedgpeth duplicated their efforts, thereby unnecessarily adding to the legal fees in the case.  Doc. 149 at 6 (listing seven dates which purport to demonstrate duplicative billing).  The Court acknowledges that various entries in the billing records appear to overlap, suggesting that both attorneys Arendt and Hedgpeth worked on the same discrete issue.  For example, the first entry (dated July 20, 2021) for both Arendt and Hedgpeth involves editing a letter to opposing counsel regarding discovery deficiencies; Ms. Arendt spent 50 minutes on the task while, on the same day, Mr. Hedgpeth spent 40 minutes on the same task, and one presumes that each attorney reviewed and edited the

same letter.  *See* Doc. 140-1, at 9; 140-2 at 8.  In fact, a cursory review by the Court identifies

other examples (not flagged by defense counsel) of potentially duplicative billing:

| | |
|---|---|
| 07/22/21 | review email from OPC and OPC's edits to stipulation |
| 08/04/21 | drafting and reviewing email to OPC |
| 09/30/21 | attend court hearing; follow-up telephone call |
| 10/11/21 | email to OPC re discovery letter |
| 10/21/21 | work on motion to compel; emails re same; |
| 12/01/21 | work on reply to MTC |
| 01/05/22 | prep for court hearing on MTC |
| 01/06/22 | prep for, attend hearing; follow-up telephone call with co-counsel |

The question that emerges, then, is how much duplication in efforts among attorneys is

reasonable, and to answer that question the Court considers the nature and complexity of the case

and the salient details of the instant dispute.  The present case is a complex, hybrid collective and

class action brought by Plaintiffs who, on behalf of themselves and other Care Coordination

Employees, claim they were not paid full earned overtime pay due to the Defendants'

misclassification scheme.  *See e.g.* Doc. 142 ("Third Amend Class and Collective Action

Complaint"), at ¶¶ 9-10.  The Court approved phased discovery, which has involved efforts to

identify the plaintiffs' class, obtain their payroll and timestamp data, and obtain third-party

contracts, including those with the State of New Mexico, which involve the administration of

health insurance plans and the utilization of certain health care providers.  It is apparent that the

attorneys here require an intimate understanding of the complexities of Medicare and Medicaid

billing and payroll practices, as well as generally deep knowledge of the healthcare industry and

its job classification schemes.  Defendants acknowledge that "due to the volume of data at issue

and the complexity of the search terms, Defendants were unable to conduct the ESI collection."

Doc. 149 at 16.  Consequently, this Court can't say that some overlap in attorney efforts is

unreasonable or excessive, especially in a complex, hybrid collective-class case with large

document productions.  *See Ysasi v. Brown*, No. CIV 13-0183 JB/CG, 2015 WL 403930, at *19,

*29 (D.N.M. Jan. 7, 2015) (finding that having three attorneys present for a deposition was reasonable).  And having multiple attorneys and paralegals work on a single task is not per se unreasonably duplicative.  *See United States ex rel. Baker v. Cmty. Health Sys., Inc.*, Civ. No. 05-279 WJ/ACT, 2013 WL 10914086, at *15 (D.N.M. Aug. 9, 2013) ("The repeating of certain tasks performed by multiple attorneys ... is a reflection of the layered and progressive process inherent in legal representation...."); *also see* Model Code of Prof'l Conduct R.1.1. (emphasis added)("Competent representation requires the legal knowledge, skill, *thoroughness* and preparation reasonably necessary for the representation.").  The fact that attorney Arendt might draft, revise and edit the motion for compel, while another attorney would review, revise and finalize the motion, is not duplicative – it is both reasonable and thorough.

The Court will deny Defendants' invitation to find that the duplicative entries identified by Defendants in their response, *see* Doc. 149 at 6, demonstrate an unreasonable repetition of tasks by Plaintiffs' counsel.

c.  Whether the Court Should Trim Plaintiffs' Fees Based on "Block Billing"

Next, Defendants complain that Plaintiffs attorneys have "block billed," which is an accounting technique whereby lawyers aggregate multiple smaller tasks into a single "block" entry, for which a single time value is assigned.  Block billing makes it difficult, if not impossible, for a reviewing entity to understand how much time was spent on a particular task, for the single time entry incorporates two or more tasks, ultimately preventing the reviewing entity from understanding how much time was spent on each discrete task.  This is particularly troubling in attorney fee cases.  *See e.g. Oklahoma Natural Gas Co. v. Apache Corp.,* 355 F.Supp.2d 1246 (N.D. Ok. 2004).  Defendants here state that attorney Arendt block-billed on at least nine entries.  The Court has carefully scrutinized the attorney's billing, and while it agrees

that certain entries incorporate multiple tasks, *see e.g.* 10/01/21; 11/08/21 #1; 12/03/21 (Doc.

140-1 at 10, 12, 13), the Court doesn't conclude that the tasks identified in the individual time

entry are not related to a single task, or at least related to the instant discovery dispute.  For

example, on October 1, 2021, Ms. Arendt's entry states:

> "Propose edits to stipulations of fact and review contracts; send email to Doug and
> Maureen; call w/ Doug; edit email and send to OPC; draft third stipulation to extend
> deadline to compel and proposed order"

Doc. 140-1 at 10.  From this entry, it certainly appears to the Court that Ms. Arendt performed a

number—five—discrete tasks related to this case; clearly, editing stipulations of fact is distinct

from drafting a stipulation to extend deadlines.  Importantly, however, each task is particular to

the instant discovery dispute, and while it may have been preferable to line-item each particular

task with its own entry, the Court is not inclined to dictate how an experienced attorney should or

should not conduct their billing practice.  Besides, the Court's intent here is to not identify how

many minutes were spent on editing stipulations of fact, or making a telephone call, or sending

an email, or drafting a stipulation to extend deadlines, for they are all billed at the same rate and

relate to the same legal issue.  The Court does not find the limited block-billing so egregious as

to warrant a decrease in Plaintiffs' fees.

    d.  <u>Whether The Attorneys Billed For Work That They Would Have Performed
Regardless</u>

Defendants next complain that Plaintiffs billed for work that they would have performed

regardless if there had been no discovery dispute.  Doc. 149 at 8.  Reviewing discovery, after all,

is a task that an attorney engages in whether the disclosure was deficient or not; initial reviews of

discovery responses and disclosures are tasks that litigants perform irrespective of whether they

ultimately file a motion to compel. *See In Re Lamey*, 2015 WL 6666244, at *7 (Bankr. D.N.M.

2015) (citing *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595, 598 (D.N.J. 2004), and

*Tequila Centinela, SA de C.V. v. Bacardi & Co. Ltd.*, 248 F.R.D. 64, 69 (D.D.C. 2008)). Therefore, expenses associated with initial reviews are generally not compensable, whereas expenses arising from additional reviews done while drafting a motion compel are properly included in a fee award.

In the Court's attempt to understand how much of the time spent on this discovery dispute was initial review versus subsequent review, the Court notes that attorney Arendt's initial time entries, in July 2021, suggest that the initial review of the Defendants' disclosures had occurred prior to July 20, 2021, as the first entry provided is described as editing a letter to opposing counsel "re discovery deficiencies." Doc. 140-1 at 9. The Court makes similar findings regarding attorney Hedgpeth's billing, where his first entries concern discovery deficiencies and the meet and confer process. Doc. 140-2 at 8. By these entries it appears to the Court that the attorneys had already conducted the initial review of the Defendants' disclosure, and had engaged (and continued to engage) with opposing counsel in the meet and confer process, so the Court can't say that the attorneys are seeking compensation for work that they otherwise would not have performed. The Court will decline the Defendants' invitation to reduce Plaintiffs' fees based on work that they would have conducted even if there had been no dispute.

e.   Whether the Attorneys Used "Billing Judgment"

Once the district court has adequate time records before it, it must then ensure that the winning attorneys have exercised " 'billing judgment.' " *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)(quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980)). Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. *See id.* Hours that an attorney would not properly bill to his or her client cannot

reasonably be billed to the adverse party, making certain time presumptively unreasonable. *See id.* at 553–54 (giving as an example time spent doing background research).

As demonstrated above, the Court has carefully examined the timekeeping records of attorneys Arendt and Hedgpeth, and notes that attorney Arendt is not seeking fees for 61 of 104 entries, or approximately 60% of all her billing entries, while attorney Hedgpeth has no-billed 21 of his 50 entries, or approximately 40%.[7]  While these statistics in and of themselves don't automatically demonstrate "billing judgment," they do suggest that the attorneys are aware that they should limit their petition for fees to what they would otherwise bill a paying client. *See Malloy v. Monahan*, 73 F.2d 1012, 1018 (10th Cir. 1996)(the Court notes that the Defendants have exercised "billing judgment" with respect to the number of hours worked).  The Court finds that the timekeeping records of both attorneys Arendt and Hedgpeth reflect a reasonable winnowing of fees to only those legal tasks that were performed in the advancement of their motion to compel.  The Court finds that the entries in the attorneys' time-keeping records appear reasonable, the tasks are properly chargeable (with the exception of some meet-and-confer and non-specific entries), and the time expended are generally appropriate to the task at hand. Therefore, the Court concludes that the attorneys have practiced appropriate billing judgment in advancing their motion to compel.

Accordingly, based on its meticulous review, the Court will deduct 20 hours from the plaintiffs' attorneys' fee request (15 hours for "meet and confer," and 5 hours for lack of specificity).  The Court finds that the attorneys should be compensated for 77.5 hours.

---

[7] Indeed, Attorney Hedgpeth indicates that his billing records do not include time spent negotiating ESI production including developing search terms, meeting and conferring with opposing counsel regarding Defendants' document production, or the time spent preparing the petition for fees or his Declaration.  Nor is Mr. Hedgpeth seeking repayment for conferring internally and preparing internal memoranda regarding Defendants' discovery deficiencies.  Mr. Hedgpeth declares that he is seeking reimbursement for 30 of the more than 41 hours that he spent on this matter.  Doc. 140-2 at 4.

**2.  WHETHER THE HOURLY RATES BILLED BY PLAINTIFFS' COUNSEL ARE EXCESSIVE**

The Court next will address the hourly rates billed by attorneys Arendt ($450/hr) and Hedgpeth ($600) and requested in the petition for attorney fees.  As with its assessment of the reasonableness of the work performed, the Court is vested with wide discretion to determine whether the rates charged by the attorneys are excessive.  *See e.g. Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) (in §1983 case, "[t]he establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area.").  The rates charged by attorneys are deemed reasonable when they reflect what lawyers with reasonably comparable skill, experience and reputation in the community, practicing in the area in which the litigation occurs, would charge for their time.  *See Lippoldt v. Cole*, 468 F.3d 1204, 1224-15 (10th Cir. 2006); *Ramos*, 713 F.2d at 555.  "The rate must reflect rates that are reasonable in light of: (i) the attorney's level of experience; and (ii) the work the attorney performed."  *XTO Energy, Inc. v. ATD, LLC*, No. 14-cv-1021 JB/SCY, 2016 WL 5376322, at *10 (D.N.M. Aug. 22, 2016).

Here, the Plaintiffs bear the burden of establishing that their requested rates either align with the local market rate for wage and hour collective/class action litigation, usually by providing the court with their own affidavits and timekeeping records, as well as with affidavits of local attorneys who practice in the same field.  *See Mosaic Potash Carlsbad, Inc. v. Lintrepid Potash, Inc.*, No. 16-CV-0808 KG/SMV, 2018 WL 2994412, at *3 (D.N.M. June 14, 2018).  If the court lacks adequate evidence to determine the prevailing market rate, it may use other factors, including its own knowledge, to establish the rate."  *Case,* 157 F.3d at 1257.

Plaintiffs' attorneys submit Declarations that set forth their respective experience and current rates charged.  Attorney Arendt has been practicing law in Chicago, Illinois, for over a

decade, having graduated from law school in 2012 and worked for the same law firm her entire

career, making partner in 2020.  Ms. Arendt practices primarily in labor and employment law,

with a concentration representing employees in wage and hours cases, both federal and state.

Mr. Arendt is a Chapter Editor for an ABA Treatise on labor law, and has spoken at a national

conference on the topic.  She typically charges $550/hr, although in this case is seeking an hourly

rate of $450/hr.  *See* Doc. 140-1 at 2-6.  Attorney Hedgpeth has also practiced law for over a

decade in Houston, Texas, is the managing shareholder of his own law firm, and has obtained

significant experience in federal and state wage and hour cases, particularly in representing

managed care employees in misclassification cases.  Attorney Hedgpeth's Declaration lists 17

federal cases around the country where he represented (or currently represents) employees in

collective, class or hybrid actions, almost all of which successfully settled.  Attorney Hedgpeth

also is a contributing author for a wage and hour treatise.  Mr. Hedgpeth indicates that he

typically charges $600/hr which is "consistent with [his] approved rate in other FLSA

settlements."  Doc. 140-2 at 5.

Defendants complain that the requested hourly rates for Plaintiffs' attorney are not

reasonable.  Doc. 149 at 2.  Defendants cite to several orders from sister courts in the District of

New Mexico which have authorized hourly rates of between $300-350/hr, suggesting that even

experienced attorneys don't charge as much as Plaintiffs' attorneys do here.  *See Miller et al., v.*

*Paschall Truck Lines, Inc. et al.,* 20-cv-303-GBW/SCY (plaintiffs brought Title VII and tort

claims against defendants, based on alleged discriminatory conduct; court awarded $350/hr to

attorney with 32 years' experience); *Baity v. Brad Hall and Assoc.,* 2019 WL 2436262 (D.N.M.

June 11, 2019) (plaintiff alleged that he was wrongfully terminated; attorney with 16 years'

experience appropriately requested rate of $300/hr); *O Centro Espirita Beneficente Uniao Do*

*Vegetal in U.S. v. Duke*, 343 F.Supp.3d 1050 (D.N.M. Oct. 25, 2018) (awarding $350/hr to immigration attorney who has "made himself the expert in this area of the law"). *Also see Griego v. United States*, CV 16-0475 JCH/SCY, 2018 WL 6727357, at *3 (D.N.M. Dec. 21, 2018) ($350/hr awarded to a civil rights litigator with 17 years of experience); *Griego v. Douglas*, No. CIV 17-0244 KBM/JHR, 2019 WL 3006993, at *2 (D.N.M. July 10, 2019) ($310/hr awarded to an attorney with 22 years of experience, and $250/hr to an attorney with almost 10 years of experience)).

The case cited by Defendants that involves a class action wage-and-hour case, *Payne v. TriState Careflight*, 278 F.Supp.3d 1276, 1298 (D.N.M. 2017), is more instructive. In *Payne*, the district court awarded rates of up to $350/hr to class action counsel, based in large part on its earlier order in the same case on another fee petition. Apparently, the defendants in *Payne* didn't object to the rates previously requested by plaintiffs' attorneys, which were then approved at $350/hr and $300/hr, respectively. 278 F.Supp.3d at 1298. At the later hearing on a subsequent petition for fees, plaintiffs' attorneys asked for higher rates, but the district judge denied that request, concluding that "the Plaintiffs have not done the spadework—affidavits of other lawyers or evidence of other cases—to nudge towards an upward adjust at this time." *Id*. As the court concluded, "at this time, the best measure of the prevailing market rates for wage-and-hour class action litigation in Albuquerque is the Court's previous approval of $350.00 an hour […] and $300.00 an hour […]; the Court will apply those same rates here."). *Id.* The Court suggested that it may have awarded higher fees had the attorneys provided sufficient justification. *Id.* The fee award in Payne was issued in 2017, or approximately 4 ½ years ago.

Hourly rates of $450 and $600/hr are higher than what is typically seen by this Court, and the Plaintiffs have provided little evidence to show that these rates are at or near the prevailing

market rate in Albuquerque.  Here, counsel for Plaintiffs have submitted declarations which

provide information regarding their backgrounds and their experience, and cite to other cases

which have approved their respective rates.  Yet neither attorney submits affidavits or other

evidence to suggest that their requested rates are reasonable in the Albuquerque community.

What are attorneys in the wage/hour class action field charging in New Mexico?  Unfortunately,

the Court is left to wonder, as Plaintiffs provide no evidence of this metric.  *See Blum v. Stenson*,

465 U.S. at 895 ("[T]he burden is on the fee applicant to produce satisfactory evidence—in

addition to the attorney's own affidavits—that the requested rates are in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation.")  The only evidence this Court could find for wage-and-hour class

action litigation in Albuquerque is the fee award discussed above in *Payne*, which was $350/hr

and $300/hr for the two attorneys involved.  *See* 278 F.Supp.3d at 1298.

Drawing on its own experience, the Court recognizes that attorneys' fees in Albuquerque

tend to be less than the fees charges by comparable attorneys in larger cities such as Chicago and

Houston, but how much less is unclear.  The Court is aware that awards of $400/hr and up have,

on occasion, been awarded in the District of New Mexico.  *See Strobel v. Rusch*, No. CIV 18-

0656 RB/JFR, 2021 WL 371575, at *2–3 (D.N.M. Feb. 3, 2021) (awarding $400/hour for an "of

counsel" attorney with nearly fifty years of experience in a trademark and copyright case that

"was neither high-end nor complex"); *Daniel & Max, LLC v. BAB Holding Co.*, Civ. No. 19-173

GJF/GBW, 2019 WL 3936865, at *2 (D.N.M. Aug. 20, 2019) (awarding $450/hour in a breach

of contract case for an attorney who had clerked on the U.S. Supreme Court and had "over thirty

years of complex federal experience as a shareholder of a major New Mexico law firm"); *also

see Fallen v. GREP Sw., LLC*, 247 F. Supp. 3d 1165, 1198 (D.N.M. 2017) (finding that, in 2017,

a rate of $375/hour approached the "upper end" of the market for "a very experienced partner engaged in complex, multi-party commercial litigation").

Defendants also argue that Plaintiffs have failed to present evidence that the subject of the litigation is "so unusual or requires such special skills that only an out-of-state attorney possesses."  Doc. 149 at 3, *citing Lippoldt*, 468 F.3d at 1222.  While the Defendants' first argument—about the requested rates being beyond what the Albuquerque market typically sees—has some merit, the Court disagrees with the Defendants' latter claim.  This Court has presided over discovery management in this case since the Rule 16 scheduling conference, has met with the parties in an informal telephonic discovery conference, and has presided over a formal motions hearing concerning this discovery dispute.  Much of the discovery sought is ESI—apparently many terabytes worth—that must be extracted from computer databases, some maintained by third parties, by using very detailed searches, a process that itself requires expertise so as to not overlook necessary information.  The Court notes the present case exhibits a level of complexity that is far beyond most others on its present docket.[8]  Plaintiffs bring both federal and state claims and therefore must navigate the "opt-in" and "opt-out" features presented by the federal and state laws.  The Court has no hesitation concluding that the instant litigation is uniquely complex and demanding of specialized counsel.  And while Plaintiffs looked to out-of-district counsel for their representation, it is not lost on the Court that so did Defendants.

Defendants cite to a "2021 Legal Trends Report published by Clio," and attach a portion of said report to their Declaration.  *See* Doc. 149-1.  The Court sees this attachment as

---

[8] By way of example, Defendants' counsel notes that his clients produced in January 2022 over 2.4 TB of data. Additionally, Defendants state that the search terms for requested ESI provided by Plaintiffs resulted in hits on approximately 5.67 million documents.  Defendants admit that this case resulted in a "very complex production."  *See* Doc. 149 at 17-18.

21

confirmation that attorneys' fees in New Mexico are generally somewhat lower than fees in neighboring states, and that rates in the $300-350/hr range are typical. The attachment lists a number of "Practice Areas," and while "Employment/Labor" is included, there is no listing specific to class/collective action. Doc. 149-1, at 19. As such, the report doesn't advance the Court's effort to discern reasonable rates for the instant wage-and-hour case, with its unique complexities.

Therefore, considering the attorneys' expertise in wage-hour complex, class action matters, the complex nature of this case, and the fact that attorney fees are generally lower in New Mexico than in surrounding areas, the Court will exercise its discretion and award Plaintiffs' attorneys a blended rate of $425/hr for the work performed on their motion to compel.

3. **WHETHER REDUCED FEES ARE APPROPRIATE GIVEN THAT DEFENDANTS' OBJECTIONS AND THE NON-DISCLOSURE OF CERTAIN DOCUMENTS WERE SUBSTANTIALLY JUSTIFIED, SOME OF DEFENDANTS' OBJECTIONS WERE SUSTAINED, AND THE SCOPE OF THE RELIEF THAT WAS GRANTED WAS NARROWER THAN WHAT WAS INITIALLY SOUGHT.**

Finally, Defendants argue that because their objections were "substantially justified" and partially successful, Plaintiffs' fee award should be reduced commensurately. Doc. 148 at 10, citing Fed. R. Civ. P. 37(a)(5)A)(ii). Seven issues[9] were before the Court when this matter was argued on January 6, 2022, and the Court granted in full five of those seven issues, and granted in part the remaining two. Doc. 138 at 21. The Court is not persuaded that the Defendants were substantially justified nor successful so as to provide the Court a separate basis to reduce fees.

---

[9] These seven discovery disputes were: 1) Supervisor Employment and Contact Information; 2) Payroll Software Information; 3) Plaintiffs' and Opt-in Plaintiffs' Licensure Information; 4) Timestamp Data; 5) Third-party contracts; 6) Audits, Communications, Reports Etc. to/from HSD; and 7) ESI. Issue 7 was raised for the first time at the January 6 hearing.

Defendants argue that they worked cooperatively and at great expense, and that whatever materials were not produced were justifiably omitted.  Doc. 149 at 11.  For example, regarding Issue 1 ("Supervisory Information"), Defendants state that they had provided the data requested, but the dispute fell on whether Defendants would have to produce information on supervisors who were not listed as direct supervisors of the Plaintiffs or opt-in Plaintiffs.  *Id.*  Defendants state that this information had "limited evidentiary value and required a significant time to produce."  *Id.*  As a result, Defendants claim, they had a "legitimate reason" to object to the disclosure of this information.  *Id.*

Defendant state that they legitimately objected to Issue 2 ("Payroll Data"), claiming that they understood the Court to suggest at the earlier informal telephonic conference that such records would only have to be produced in .pdf and not .csv format.  Doc. 19 at 11-12.  Defendants ultimately complied with the Court's order and produced the information in .csv format, but state that this misunderstanding explained their delayed production, which came at great expense.  *Id.* at 12.  Regarding Issues 3 and 4 ("Licensure Information" and "Timestamp Data") and Issue 6 (Document to/from HSD), Defendants argue that they ultimately did produce this information, but that doing so was extremely burdensome, hampered in part by the COVID-19 uptick and costing between $50,000 and $80,000 in employee time.  *Id.* at 12-13.

Regarding Issue 5 ("Contracts"), Defendants state that Plaintiffs significantly narrowed their request for third-party contracts, and in their reply brief "buried" a proposal that they would accept a sampling of 15 contracts relating to utilization review.  Doc. 149 at 19.  Defendants claim that had Plaintiffs originally made this request, or actually engaged in a good faith conferral with Defendants, there would have been no dispute and the issue would not have been part of the motion to compel.  *Id.*  Furthermore, given the holidays and the pandemic, Defendants

were not able to adequately respond to Plaintiffs' proposal, due to factors outside their control. Defendants argue that the Plaintiffs should not be compensated for their work on this issue given that their original request, later narrowed, was overly broad, unduly burdensome and not proportional to the needs of their case. *Id*. at 20. Defendants also travel great lengths to explain the ESI dispute (Issue 7) and complain that they were "ambushed" and unprepared to adequately explain the ESI process to the Court at the hearing. *Id.* at 17. Nonetheless, Defendants claim they worked cooperatively to accomplish a very complex production. *Id.* at 17-18.

The Court presided over a lengthy hearing on Plaintiffs' motion to compel and ultimately found that Defendants had refused to disclose, or partially disclosed, much information that was relevant and proportional to the needs of Plaintiffs' case. Of the seven issues before the Court on Plaintiffs' motion to compel, the Court granted in full Issues 2, 3, 5, 6, and 7. Doc. 138 at 21. The Court granted in part Issues 1 and 4, yet the limitations imposed by the Court can hardly qualify as "substantial" vindication of Defendants' position. Regarding Issue 1 ("Supervisor Information"), the Court ordered Defendants to produce all information for the 95 named supervisors, except the 6 who were represented by counsel and whose statements and actions could legally bind their employer. Doc. 138 at 7. Regarding Issue 4 ("Timestamp Data"), the Court granted Plaintiffs' request in part, narrowing the discovery to programs "currently in use" during the relevant time period; regarding programs no longer in use, the Court ordered Defendants to assist Plaintiffs in communicating with those program developers. Doc. 138 at 14. Having made these two narrow limitations, the Court cannot agree that the Defendants were "substantially justified" in objecting to Plaintiffs' discovery requests. And finally, it is true that Plaintiffs narrowed their original request on Issue 5. The amended request (from "all" contracts to 15 representative samples) came in the Plaintiffs' reply brief, shortly before the hearing, and

24

perhaps can be viewed as an implicit recognition that the original request was overly broad, unduly burdensome and not proportional to the needs of the case. The Court sees Plaintiffs' pared-down request for third party contracts as a reasonable compromise to ameliorate any burden that such request has caused Defendants. *Cf. XTO Energy, Inc.*, 2016 WL 5376322, at *8 (in context of Rule 45(d), a party's refusal to narrowly tailor its discovery request to its needs can impose an undue burden when the discovery is overly broad and unnecessary, thereby resulting in a fee award)(citations omitted). The Court is encouraged when litigants work cooperatively in the discovery process, and here it does not appear to the Court that this narrowed request, on the eve of the hearing, was an ambush designed to catch Defendants off guard.

The Court is not persuaded that Defendants' failure to provide the discovery at issue was reasonable or substantially justified. Defendants complain that the production was burdensome, which the Court accepts as true. But the Defendants do not adequately explain their earlier unwillingness or inability to produce the discovery in the first place. The Court will not reduce Plaintiffs' fee request based on Defendants' claimed justification for their original non-compliance, or the fact that the Court slightly narrowed Plaintiffs' discovery requests in two of seven issues.

## CONCLUSION

The Court finds that counsel for Plaintiffs have appropriately billed 77.5 hours, and should be compensated at a blended rate of $425/hr. This results in fees of $32,937.50, together with gross receipts tax (7.875%) of $2,593.83, for a total award of $35,531.33. The Court sees this award as reasonable and fails to note any legitimate reason to depart from this amount. Defendants shall tender this sum to Plaintiffs within 45 days of this Order.

**IT IS SO ORDERED.**

_____
JOHN F. ROBBENHAAR
U.S. Magistrate Judge