IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DANIA PRUESS et al,**

    **Plaintiff,**

**v.**                                                                                                 **1:19-cv-00629-DHU-JFR**

**PRESBYTERIAN HEALTH PLAN, INC et al,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for a Trial (Doc. 212), and Plaintiffs' Motion to Strike an Affirmative Defense (Doc. 213), Motion to Strike Appendices Submitted in Support of Defendants' Motion to Decertify (Doc. 241), and Motion to Strike Appendix A Submitted in Support of Defendants' Opposition to Rule 23 Motion for Class Certification (Doc. 254). Named Plaintiff Diana Pruess ("Pruess"), on behalf of herself and those similarly situated (collectively, "Plaintiffs"), is bringing a Fair Labor Standards Act ("FLSA") collective action, defending its preliminary certification, and seeking a Rule 23 class certification for alleged violations of state and federal labor law due to Defendants' failure to properly pay their employees overtime wages. For the reasons set forth below, the Court now GRANTS all four motions.

**I. Facts and Procedural Background**

On June 11, 2019, Plaintiffs filed a complaint against Defendants Presbyterian Health Plan ("Presbyterian") and Fluent Health LLC ("Fluent") for violations of FLSA.[1] The third and final

---

[1] The procedural history for this case is very lengthy with hundreds of docket entries. For a thorough review of the procedural history of this case refer to Doc. 142 (Third Amended Class and Collective Action Complaint).

amended complaint ("Complaint") was filed on January 31, 2022. Pruess brought this complaint alleging that Defendants, her former employers, committed wage and overtime violations. She filed the Third Complaint on behalf of herself and all similarly situated individuals as she seeks a Rule 23 class action certification and defends the preliminary FLSA collective action certification.

Pruess was a Care Coordinator ("CC") for Presbyterian. In her Complaint, she alleges that Defendants created a misclassification scheme so that all CC's were not paid overtime even when they regularly worked in excess of forty hours a week in violation FLSA. In addition to the FLSA claim, Plaintiffs bring class action claims under the New Mexico Minimum Wage Act[2] ("NMMWA"), pursuant to Fed. R. Civ. P. 23(b)(3) and 23(c)(4) for Defendants' failure to pay the CCs for all earned overtime pay.

On April 21, 2023, Defendants filed an opposed motion for a jury trial. *See* Doc. 212. Also on April 21, 2023, Plaintiffs filed a motion to strike Defendants' affirmative defense. *See* Doc. 213. On August 4, 2023, Plaintiffs filed a motion to strike appendices submitted in support of Defendants' motion to decertify. *See* Doc. 241. On August 28, 2023, Plaintiffs filed a similar motion to strike Appendix A submitted in support of Defendants' opposition to Plaintiffs' Rule 23 motion for class certification. *See* Doc. 254. On January 25, 2024, the Court held a hearing on these motions.[3]

---

[2] N.M. STAT. ANN. § 50-4-19, *et seq.*

[3] There are still two pending motions (a motion to certify a Rule 23 class action (Doc. 230) and a motion to decertify a FLSA class (Doc. 233)) which were argued at the same hearing before this Court on January 25, 2024 but are not ruled on in this Order. However, because resolving the legal issues in these four motions is crucial to resolving the issues in Doc. 230 and 233, the Court chose to dispose of these motions first before turning to the other more substantive motions.

## II. Legal Standards

The right to a jury trial is enshrined in the Seventh Amendment to the federal Constitution,[4] and has been incorporated into the Federal Rules of Civil Procedure in Rule 38: "On any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b). Trial courts have broad discretion in granting motions for jury trials even when such motions are untimely. *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980).

When an affirmative defense is waived, it must be done so knowingly and intelligently. *Wood v. Milyard*, 566 U.S. 463, 132 S. Ct. 1826 (2012).

## III. Analysis

**A. Defendants' motion for a jury trial is granted.**

Defendants now request a jury trial in this case. Defendants argue that where a jury demand is unlikely to delay the proceedings, the late filing of a jury demand is not a "strong and compelling" reason to deny the proposed a jury trial. *See, e.g., Escobar v. Gallegos Corp.*, No. 10-CV-00882-CBS-MJW, 2010 WL 5441948, at *2 (D. Colo. Dec. 28, 2010). Defendants also argue that Plaintiffs will not be unfairly prejudiced by a jury trial and that the courts in this Circuit routinely grants untimely jury demand where there is no prejudice to the non-moving party. *See Brown v. EOG Res., Inc.*, No. 22-CV-0116 KG/GBW, 2023 WL 402057, at *1 (D.N.M. Jan. 25, 2023).

---

[4] *See* US CONST. art. VII ("In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.").

3

Plaintiffs argue that Defendants deliberately waived their right to a jury trial by not demanding one at the outset of the case. In particular, that "[d]efendants' Motion for a Jury Trial comes nearly four years after the filing of this case and after the close of discovery. The only possible explanations for Defendants' egregiously late motion are negligence or a conscious change in strategy. Neither is grounds to grant a rescission of their waiver, and both are 'strong and compelling reasons' to deny their motion under Tenth Circuit law." Doc. 219 at 1. Plaintiffs did not demand a jury when they filed their complaint, and neither did Defendants when they filed their response. *Id.* at 2. During the opt-in period, the parties submitted a Joint Status Report ("JSR") which confirmed that the parties agreed that this was a non-jury case. *See* Doc. 79 at 12, JSR. Plaintiffs also argue that "mere inadvertence" in failing to demand a jury trial does not justify an untimely jury demand. *Nissan Motor Corp. in U.S.A. v. Burciaga*, 982 F.2d 408, 409 (10th Cir. 1992). Various conditions might lead a court to find strong and compelling circumstances. Ultimately, Plaintiffs argue that they will now face prejudice in preparing for a jury trial as opposed to a bench trial.

The right to a jury trial stems from the Seventh Amendment to the United States Constitution. Generally, a party asserts this right to a jury trial by serving the opposing party a written demand in any pleading no later than fourteen days after the last pleading directed to the issue is served. Fed. R. Civ. P. 38(b). However, a "court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b). The constitutional right to a jury is absolutely fundamental and therefore "the federal policy favoring jury trials is of historic and continuing strength." *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150, 155 (10th Cir. 1965). It is within the trial courts discretion to grant motions, timely or not, for jury trials. *See Paramount Pictures Corp.*, 621 F.2d at 1090; *Ombe v. New Mexico*, No. CIV 14-0763 RB/KBM,

2017 WL 3393962, at *1 ("Rule 39 gives the Court discretion, upon motion by a party, to grant a jury trial even where that motion is untimely."); *Blanks v. Hypower, Inc.*, No. CV 12-440 JCH/ACT, 2012 WL 13076177, at *2 (D.N.M. Sept. 17, 2012) ("The trial court has broad discretion in deciding whether to grant an untimely motion for a jury trial."). Under Rule 39, trial courts should exercise its discretion and grant untimely requests for jury trials unless there are "strong and compelling reasons to the contrary." *Nissan Motor Corp.*, 982 F.2d at 409.

The Court understands it is well within its discretion to deny Defendants' request for a jury trial. *See Dill v. City of Edmond, Okl.,* 155 F.3d 1193, 1208 (10th Cir. 1998) (denying a jury demand where plaintiff had no explanation for their delay in requesting one); *See W. Ridge Grp., LLC v. First Tr. Co. of Onaga*, 414 F. App'x 112 (10th Cir. 2011); *Oklahoma Nat. Gas Co.*, 156 F.3d 1244 (10th Cir. 1998). However, just because it is not an *abuse* of discretion to reject a Rule 39(b) motion, the Court is not mandated to do so. In fact, the Tenth Circuit has made the granting of an untimely request for a jury trial to be a presumption overcome by strong and compelling reasons to the contrary. *See Nissan,* 982 F.2d at 409.

It is the position of this Court that requests for jury trials, as protected by the Seventh Amendment, should be granted wherever possible. To deny such a request, this Court would have to be convinced that there are strong and compelling reasons to reject it. Granting Defendants' request will not delay the proceedings, trial has not been set, class certifications have not been determined, and there has only been one scheduling order. *See, e.g., Brown v. EOG Res., Inc.*, No. 22-CV-0116 KG/GBW, 2023 WL 402057, at *2 (D.N.M. Jan. 25, 2023) (case where the district court did not find strong and compelling reasons when discovery had not begun, class certifications were not completed, there was no operative scheduling order, and no rule 16 scheduling conference.) The only potential prejudice that Plaintiffs highlight is that this demand occurred near

the end of discovery and was thus prejudicial because the parties had been preparing for a bench trial. While the Court understands that there is potentially some prejudice Plaintiffs might face, the Court must balance that potential prejudice against the fundamental right of a jury trial. *See AMF Tuboscope*, 352 F.2d at 155.

**B. Plaintiffs' motion to strike the professional exemption as an affirmative defense is granted because Defendants waived the use of that defense.**

Plaintiffs move to strike Defendants' professional exemption as an affirmative defense. It is their position that Defendants waived the use of this defense months ago, and to allow them to use it now would greatly prejudice Plaintiffs. In January 2023, counsel for the parties conferred regarding Plaintiffs' Amended Notices of Rule 30(b)(6) witnesses which included topics related to the professional exemption. *See* Doc. 213, Ex. A at ¶ 3 (Plaintiffs' Motion to Strike Affirmative Defense). In a letter dated to January 25, 2023, Defendants designated witnesses to testify to the 30(b)(6) issues, but failed to designate a 30(b)(6) witness to testify as to Topic No. 14 (the professional exemption as it applied to CC's.) *Id*. ¶ 4. On January 27, Plaintiffs' emailed Defendants to ask whether they still intended to assert the professional exemption as there were no witnesses designated to testify to that topic. *Id.* at ¶ 5. When Defendants did not respond, Plaintiffs reached out again to ask, "whether Defendants are arguing that care coordinators are exempt under the professional exemption to the FLSA and the New Mexico Minimum Wage Act." *Id*. Defendants responded that they "intend[] to argue that CCs are exempt under the administrative exemption, so the list we previously sent is complete." *Id*. Plaintiffs worried that this answer was unclear, so on February 1, Plaintiffs' counsel engaged in the following exchange with Defendants' counsel:

> Plaintiffs' Counsel: Thanks Iva. Please confirm that Defendants are not arguing that Care Coordinators are exempt under the professional exemption.

6

    Defendants' Counsel: Yes, confirmed.

Doc. 213, Ex. A, Attach. 1. The individual referred to as "Iva" in this exchange is Iva Velickovic, one of the attorneys of record for Defendants. Plaintiffs believe that this exchange, and the communications in the days leading up to February 1, was an affirmative waiver of the professional exemption as a defense. Therefore, they conducted the rest of the discovery/deposition phase of this litigation focusing on the administrative exemption. There were no depositions on the professional exemption. On April 10, 2023, Defendants sent a letter to Plaintiffs in which they explained that they would be asserting the professional exemption with respect to certain Plaintiffs. They offered to re-open depositions of one designee for a maximum of two hours.

  Plaintiffs argue that Defendants expressly waived their right to this defense in a way that was "clear, explicit, and unambiguous." *McCormick v. Parker*, 571 F. App'x 683, 687 (10th Cir. 2014) (quoting *Sharrieff v. Cathel*, 574 F.3d 225, 229 (3rd Cir. 2009). "The touchstone for determining whether a waiver is express is the clarity of the intent to waive." *Id*. Plaintiffs believe that they would be extremely prejudiced should Defendants be allowed to use this defense because all of the 30(b)(6) witnesses have been deposed and discovery has closed. It would be extremely expensive and time consuming to reopen discovery in this way. See *Klaczkiewicz v. Nationstar Mortg. LLC*, 2018 WL 11252671, at *2 (D. Wyo. May 18, 2018) (denying motion to re-open discovery because the additional cost to defendant would be prejudicial); *Cook v. Fishman*, 2019 WL 13177901, at *4 (D.N.M. Dec. 19, 2019) (denying motion to amend because "[r]eopening discovery, and all the resources that are expended with it, would cause additional expense to Defendants"); *Jama v. City & Cnty. Of Denver*, 304 F.R.D. 289, 301 (D. Colo. 2014) ("the delay and expense associated with [re-opening discovery] also represents a form of prejudice").

Defendants argue that striking all or part of a pleading is a "drastic remedy," and "motions to strike under Rule 12(f) generally are disfavored." *Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 994 (D.N.M. 2016) (quoting *Est. of Gonzales v. AAA Life Ins. Co.*, No. CIV 11-0486 JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012) (internal quotation omitted)). Plaintiffs' motion is untimely under the standards of Rule 12(f). *See* Fed. R. Civ. P. 12(f) (a "court may strike from a pleading an insufficient defense . . . on motion made by a party either before responding to the pleading, or, if a response is not allowed, within 21 days after being served with the pleading.") Defendants do not dispute the facts outlined by Plaintiffs regarding the alleged waiver, but they insist it was a misunderstanding: "Plaintiffs thought that Presbyterian was not asserting the professional exemption as to only some Plaintiffs and putative class members." Doc. 220 at 8 (Defendants' Response).

The question before the Court is whether Presbyterian explicitly waived the professional exemption. Importantly, the question is not whether the Defendants would have been able to now raise this defense for the first time, or whether this defense should be struck under the standards of Rule 12(f).[5] The Tenth Circuit has not authored any opinions on the specific question of what is required to waive the professional exemption in FLSA disputes. However, cases on waiver in other legal contexts and other circuits are instructive. "To be express, a waiver must be clear, explicit, and unambiguous." *McCormick*, 571 F. App'x at 697. Coming to regret an express waiver "it not a sufficient reason to allow recission." *Id.* at 688 (citing *Pike v. Guarino,* 492 F. 3d 61, 72 (1st Cir. 2007). The Fourth Circuit has held that a "defense may be 'waived' by conscious and deliberate conduct indicating the wish to not present the defense…in which case the court's

---

[5] While much of Defendants' argument was based on Rule 12(f), Plaintiffs are not moving to strike under Rule 12(f). This is an issue of waiver.

consideration of that defense would be an 'abuse of discretion.'" *Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 635 (4th Cir. 2017) (citing *Wood v. Milyard,* 566 U.S. 463, 132 S.Ct. 1826, 1834-5 (2012)).[6] Changes in tactics, strategy, or position are all permissible. *See, e.g., Coniff v. Vermont*, No. 2:10-CV-32, 2013 WL 5429428 (D. Vt. Sept. 30, 2013), *aff'd sub nom. Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015), at *9 ("Parties may change their legal positions during discovery, and in fact are required to do so when there is an error or omission.").[7] However, the ability to change tactics, strategy, or position does *not* include the ability to raise a defense that has been expressly waived. *See McCormick,* 571 F. App'x at 697.[8]

Under the available case law on waving defenses in civil actions, the Court finds that Defendants clearly, explicitly and unambiguously waived the professional exemption when they stated in two separate emails on two separate days that the CC's would not fall under the professional exemption. Plaintiffs plainly asked Defendants, during the appropriate discovery

---

[6] Ultimately, this was a case where the court found that there was no waiver of the statute of limitations defense because although it was only mentioned in the answer to the complaint and then never again, that did not create a conscious and deliberate waiver of the defense.

[7] The Court notes that Defendants rely on this case for their argument that they did not waive. However, this case is not analogous: in *Coniff,* a Vermont statute referenced FLSA, and the plaintiff made an argument that the reference in a state statute to FLSA was a waiver of sovereign immunity. For sovereign immunity to be waved in Vermont it must be done so explicitly in the statute. *Coniff,* 2013 WL 5429428, * 5. In that case, the court found there was no express waiver. Of course, this is a very different situation from the case at bar in which an attorney explicitly addressed the issue of waiver in the midst of discovery, and where such waiver is not required to be explicit in a relevant statute.

[8] Defendants argue that these cases are in different contexts (mostly Habeas Corpus and waivers of exhaustion requirements) and therefore should not be used in this analysis. However, these cases are still about the *process* of waiver specifically, which is what is at issue in this case. In the Court's view, Defendants' case law is much more problematic. It focuses almost entirely on amending pleadings and Rule 12(f) motions to strike and does not address the prejudice caused by a recission of waiver. *See e.g., Fed. Nat'l Mortg. Ass'n,* 161 F. Supp. 3d at 994; *see also Kimble v. EOG Resources, Inc.,* No. 2:22-CV-674-MLG-GJF, 2023 WL 2499717 (D.N.M. Mar. 14, 2023).

period, if they would be asserting the professional exemption so that they could ensure that there was a deposition witness who could speak to that defense and Defendants responded that they "intend[] to argue that CCs are exempt under the administrative exemption, so the list we previously sent is complete." Doc. 213, Ex. A, Attach. 1. This statement contains no qualification: it is a clear denial of the professional exemption and it includes an assertion that they would be using the administrative exemption *only*.  Out of an abundance of caution, Plaintiffs' counsel emailed one of Defendants' attorneys[9] to confirm that "Defendants are not arguing that Care Coordinators are exempt under the professional exemption," to which Attorney Velickovic responded "Yes, confirmed." To allow recission now would be an abuse of discretion. *See Woodson*, 855 F.3d at 635.

The Court also finds, unlike Defendants' request for a jury trial, allowing Defendants to use this defense at this point after they waived it would cause a great deal of prejudice to Plaintiffs. Due to Defendants' obvious waiver, Plaintiffs relied on the waiver in good faith and lost the opportunity to depose anyone on this exemption.[10] The Court finds Defendants' substitute discovery offer to be clearly insufficient. Part of the difficulty arises from the different positions Defendants have taken on the exemption: Defendants used to claim (before waiver) that the exemption applied to all care coordinators. Their new position (post waiver) is that it only apples

---

[9] This was an attorney who appeared in front of this Court and did not contradict this version of events.

[10] In their response, Defendants claimed that Plaintiffs asked several questions about topics which are "relevant to the professional exemption." Doc. 220 at 13. They also argue that months before Defendants waived the defense Plaintiffs asked numerous questions about licensure requirements "that they now claim they would have asked Ms. Baros." *Id.* As discussed further above, the Court does not believe this level of discovery to be sufficient and finds it inappropriate for Defendants to determine the level of suitable discovery for their opponent.

to some care coordinators, including the new opt-in Plaintiffs.[11] This complication, as Plaintiffs note, would require different questions and a wholly different set of witnesses who would need to be deposed. To re-open discovery to the extent that it would heal the harms caused by Defendants waiver and recission of their waiver would create the prejudice of a significantly delayed trial. This is a case which has been litigated pre-trial for nearly five years and will incur another indeterminate delay should discovery re-open.[12]

The Court is concerned that allowing recission would not only violate available case law on waiver, but it would encourage potentially underhanded behavior. Defendants' own explanation of their behavior is illogical. They claim, in the same brief, that it is Plaintiffs' error (Plaintiffs *thought* that Presbyterian was not asserting the professional exemption as to only *some* Plaintiffs and putative class members)[13] that caused the misunderstanding, and also it because Defendants uncovered evidence that they did not know about in advance.[14] This conflicting explanation makes the Court wary of the initial reasons that Defendants so clearly made a waiver and that the impetus might have been strategy based. Even if Defendants' counsel made a completely innocent error in twice waiving the defense, it was an error that resulted in a clear, explicit, and unambiguous waiver

---

[11] As described by Defendants, "certain other current and former Care Coordinator IIIs and IVs with similar licenses who are putative class members." Doc. 220 at 6.

[12] This is distinguished from the cases cited by Defendants on *raising* affirmative defenses late in a litigation. In those cases, Plaintiffs were not caused any prejudice because defenses were being raised for the *first* time, well in advance of trial. *See Creative Consumer Concepts*, 563 F.3d at 1076; *See, also, e.g., Taylor v. HD & Assocs., L.L.C*., 45 F.4th 833, 838 (5th Cir. 2022); *Aponte v. Mason Cnty. Fire Prot. Dist*. No. 16, No. 3:21-cv-05459-DGE, 2022 WL 17092670, at * 4 (W.D. Wash. Nov. 21, 2022); *Padilla v. Sheldon Rabin*, M.D., P.C., 176 F. Supp. 3d 290, 302 (E.D.N.Y. 2016); *Schwind v. EW & Assocs*., Inc., 357 F. Supp. 2d 691, 698 (S.D.N.Y. 2005).

[13] Doc. 220 at 8.

[14] Doc. 220, Exhibit A, at ¶ 5.

of the professional exemption defense which the Court will not allow the Defendants to rescind now.

## C. Plaintiffs' motion to strike appendices submitted in support of defendants' motion to decertify is granted.

Plaintiffs move this Court to strike the appendices submitted in support of Defendants' motion to decertify. In particular, Plaintiffs move to strike Appendix A (Doc. 233-50) and Appendix B (Doc. 233-51).[15] Plaintiffs argue these appendices are not admissible summaries under Fed. R. Evid. 1006 because they include legal conclusions and inferences which are not accurate and not based in their entirety on admissible evidence. Plaintiffs also argue that the appendices violate Local Rule 10.5. Plaintiffs believe that these appendices are an attempt by Defendants' to sidestep the Court's order setting page limits on briefing and exhibits. *See* Doc. 239 (Order by District Judge David H. Urias Granting 228 Motion for Leave to File Excess Pages.)

Defendants argue that the appendices are meant to assist the Court with more efficiently appreciating the differences between the job duties of members of the opt-in's written discovery responses and deposition testimony. These appendices are not – and do not purport to be – Rule 1006 summary tables. According to Defendants because the Court has the underlying evidence from which these appendices are based off of, the Court itself can determine the underlying truth or falsehood of the appendices. Defendants argue that their appendices do not violate the page limits set by this Court because "the appendices do not contain legal argument and are not themselves exhibits, neither page limit applies." *Id.* at 5.

---

[15] Appendix A is pages 838-879 of Defendants' Exhibits, and Appendix B is pages 880-911 of Defendants' Exhibits.

The Court does not find it necessary to conduct the Rule 1006 analysis, or to determine whether the rules of evidence apply to class action proceedings[16] because the Court now holds that the appendices submitted in support of Defendants' motion to decertify the FLSA collective violate the local rules. In the District of New Mexico, "all exhibits to a motion, response or reply, including excerpts from a deposition, must not exceed a total of fifty (50) pages, unless all parties agree otherwise." D.N.M. L.R. 10.5. In this case, the parties agreed, and the Court ordered, that briefs in this case would not exceed 35 pages, replies would not exceed 17 pages, and exhibits would not exceed 500 pages. Counsel for the parties agreed that Defendants could file up to 700 pages of exhibits. Doc. 241, Ex. A. The appendices exceed these limitations by about two-hundred pages. Therefore, because the appendices violate the Court order and the parties' agreement, the appendices violate D.N.M. L.R. 10.5.[17]

While the Court did not determine whether the charts are proper summaries under Rule 1006, the Court does find it important to point out that these charts are inaccurate. Defendants' tables cherry pick answers from depositions, rather than summarizing witnesses' complete and

---

[16] Defendants argued that the rules of evidence do not apply to class certification hearings. While not relevant because of the Court's ruling regarding the local rules, it is likely the Court would determine the federal rules of evidence do apply to class action hearings. As cited by Defendants themselves, other district courts in the Tenth Circuit have found that the rules of evidence do apply to class certification procedures. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312 (D.N.M.), *adhered to on reconsideration*, 312 F.R.D. 620 (D.N.M. 2015). The Rules of Evidence themselves indicate that the rules apply because Rule 1101 provides that the rules of evidence apply to civil cases and proceedings before United States district courts. The listed exception in this rule do not include class action certification. *See* Fed. R. Evid. 1101. The Supreme Court has also indicated as much. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2553-54 (2011) ("The District Court concluded that *Daubert* did not apply to testimony at the certification stage of class-action proceedings. We doubt that is so....").

[17] Defendants also argue that because these charts are not argumentative, that they do not violate the Local Rules or the Court's order. However, as explained in subsequent paragraphs, their inaccuracies make them argument, not unbiased summary of evidence.

13

accurate answers.[18] In the hearing this Court held on the motions, Defendants' counsel admitted factual inaccuracies: "Now, I'm not saying these appendices were perfect. I'm not saying our quality control was 100 percent."[19] Inaccuracy notwithstanding, given that these appendices violate the local rules they will be struck from the record.

**D. Plaintiffs' motion to strike Appendix A submitted in support of Defendants' opposition to Rule 23 motion for class certification is granted.**

Plaintiffs filed a substantially similar motion to strike Appendix A submitted by Defendants in opposition to Plaintiffs' Rule 23 class certification (Doc. 245-30). Plaintiffs incorporated their arguments from Doc. 241, that Appendix A is not a valid summary under Fed. R. Evid. 1006, includes the same inaccuracies as the prior appendices, circumvents this Court's order (Doc. 239), and violates Local Rule 10.5. Defendants make substantially similar arguments to defend their appendix, mainly that Appendix A was not a summary under Rule 1006 and that it was their understanding that this Appendix did not violate the agreement of the parties regarding page numbers. *See* Doc. 261. For the same reasons analyzed in the previous section the Court will strike Appendix A because it is in violation of D.N.M. L.R. 10.5.

### IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Trial (Doc. 212); **GRANTS** Plaintiffs' Motion to Strike an Affirmative Defense (Doc. 213); **GRANTS** Plaintiffs' Motion to Strike Appendices Submitted in Support of Defendants' Motion to Decertify

---

[18] For example, Defendants cite in their appendix that Opt-in Plaintiff Kim Larrichio said "We didn't have access to software programs. Our managers and supervisors did," but Defendants conveniently left out her next response that she actually did use the JIVA program, but her previous answer was in reference to a different software program that only managers had. *See* ECF No. 233-46, Larrichio Depo., 62:8-15.

[19] Doc. 275 at 176, 18-19 (Transcript of Proceedings, January 25, 2024).

(Doc. 241); and **GRANTS** Plaintiffs' Motion to Strike Appendix A Submitted in Support of Defendants' Opposition to Rule 23 Motion for Class Certification (Doc. 254).

    **IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE